**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 5, 2004**

MARQUIS DYER,

    Plaintiff-Appellee,

v                                                   No. 123590

EDWARD P. TRACHTMAN, D.O.,

    Defendant-Appellant.

_____

**BEFORE THE ENTIRE BENCH**

**KELLY, J.**

In this case, plaintiff alleges that the defendant physician negligently injured him while performing an independent medical examination. The issue is whether plaintiff has a cause of action in ordinary negligence or in medical malpractice.

The Court of Appeals concluded that the cause is grounded in ordinary negligence. We disagree and conclude that it sounds in medical malpractice. Therefore, we reverse the decision of the Court of Appeals, reinstate

plaintiff's medical malpractice claim, and remand this case to the trial court for further proceedings.

## I.  Facts

Plaintiff alleged in an unrelated civil complaint that he injured his left knee and right shoulder during a physical altercation.  Following the injury, he underwent surgery to repair a tear in the superior labrum of his right shoulder. During the course of discovery in the civil action, the opposing party engaged defendant Edward Trachtman, D.O., to perform an independent medical examination (IME) of plaintiff.

Before the examination, plaintiff asserted, he told defendant that surgery had been performed recently on his shoulder.[1]  He also informed defendant that plaintiff's surgeon had placed restrictions on the movement of plaintiff's right arm and shoulder.  Among these restrictions was a caution to plaintiff to avoid lifting the arm above forty-five degrees.

During the course of the examination, it is alleged, defendant nonetheless forcefully rotated plaintiff's right arm and shoulder ninety degrees, detaching the labrum from the right shoulder.  This required plaintiff to undergo surgery to repair the new damage.

---

[1]We assume the accuracy of plaintiff's assertions for the purpose of this appeal.

Plaintiff's original complaint against defendant alleged medical malpractice, among other claims. Defendant moved for summary disposition and argued that the IME did not give rise to a physician-patient relationship between plaintiff and defendant. Defendant also argued that the complaint's remaining counts were nothing more than restatements of the malpractice claim.

Plaintiff moved to amend the complaint to raise additional claims, including ordinary negligence. The trial court agreed with defendant that no physician-patient relationship had been created and held that a claim of medical malpractice could not be brought. Accordingly, it granted defendant's motion. In addition, it denied plaintiff's motion to amend the complaint, concluding that amendment would be futile. Any count sounding in negligence against the physician, it reasoned, would be a claim of medical malpractice that would require a physician-patient relationship.

On appeal, the Court of Appeals agreed with the trial court that the absence of a physician-patient relationship was fatal to plaintiff's malpractice claim. 255 Mich App 659, 662-663; 662 NW2d 60 (2003). However, the court then determined that, without a physician-patient relationship, plaintiff could still maintain a claim in ordinary negligence. *Id.*, 663-664. It remanded the case to allow

3

plaintiff to amend his complaint. In so doing, the Court of Appeals recognized that a determination whether negligence had occurred might require testimony about what a reasonable physician might have done during a similar IME. *Id.*, 666 n 6.

We granted leave to appeal to consider the following questions: (1) whether a physician may be held liable for ordinary negligence in the performance of an IME; (2) if so, whether expert testimony may be used to establish the physician's duty in performing the IME; and (3) whether an IME physician might have some limited professional duty, short of the duty that would arise if a traditional physician-patient relationship existed, that could support a claim for medical malpractice. 468 Mich 943 (2003).

## II. Standard of Review

Whether a defendant owes any duty to a plaintiff to avoid negligent conduct is a question of law for the court to resolve. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). "In determining whether to impose a duty, this Court evaluates factors such as: the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997), citing *Buczkowski v McKay*, 441 Mich 96, 100; 490 NW2d 330 (1992). Thus, a duty arises out of the existence of a relationship

4

"between the parties of such a character that social policy justifies" its imposition. Prosser & Keeton, Torts (5th ed), § 56, p 374. See also, *Buczowski, supra,* 100-101.

### III. Physician-Patient Relationship

The Court of Appeals correctly recognized that this Court has not yet directly determined what, if any, relationship should be recognized between a physician performing an IME and an examinee.[2]  Having reviewed persuasive authority from other courts, we conclude that an IME physician has a limited physician-patient relationship with the examinee that gives rise to limited duties to exercise professional care.

We agree with the decisions of other courts and of our own Court of Appeals[3] that the relationship is not the traditional one.  It is a limited relationship.  It does not involve the full panoply of the physician's typical responsibilities to diagnose and treat the examinee for medical conditions.  The IME physician, acting at the behest of a third party, is not liable to the examinee for damages resulting from the conclusions the physician reaches or reports.  The limited relationship that we

---

[2]Our decision is limited to the relationship between an examinee and a physician who provides an IME but does not treat the examinee.

[3]See *Rogers v Horvath*, 65 Mich App 644, 647; 237 NW2d 595 (1975).

recognize imposes a duty on the IME physician to perform the examination in a manner not to cause physical harm to the examinee.

As correctly noted by the Court of Appeals, the duty of care in a medical malpractice action has its basis in the relationship between the physician and the patient. See *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 45; 594 NW2d 455 (1999), citing *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647, 652; 438 NW2d 276 (1989). See also anno: *Physician's duties and liabilities to person examined pursuant to physician's contract with such person's prospective or actual employer or insurer,* 10 ALR3d 1071; *Greenberg v Perkins*, 845 P2d 530, 534 (Colo, 1993). The Court of Appeals relied on its earlier case law and cases from other jurisdictions to hold: "In an IME context, there is no physician-patient relationship and there can be no liability for professional negligence or medical malpractice." 255 Mich 662, citing *Rogers v Horvath*, 65 Mich App 644, 647; 237 NW2d 595 (1975). See also 255 Mich 622 n 3.

A majority of courts recognizes that a traditional physician-patient relationship does not exist in the context of an IME setting. However, a growing number find that the relationship does exist in some form. Moreover, they conclude that it gives rise to particular professional

6

duties owed by the examining physician. See e.g., *Greenberg*, 845 P2d 534-535; *Stanley v McCarver*, 204 Ariz 339, 341-342; 63 P3d 1076 (2003); *Reed v Bojarski*, 166 NJ 89, 95-99; 764 A2d 433 (2001); 10 ALR3d 1071.

As aptly noted in *Greenberg*, the cases considering malpractice liability in an IME setting "are remarkable for the diversity of their analyses." *Greenberg*, 845 P2d 535. The majority of jurisdictions has recognized that there is no traditional physician-patient relationship in an IME setting that would create a duty to properly diagnose or treat abnormalities or conditions. See 10 ALR3d 1071; *Hafner v Beck*, 185 Ariz 389, 391; 916 P2d 1105 (Ariz App, 1995); *Felton v Schaeffer*, 229 Cal App 3d 229, 238-239; 279 Cal Rptr 713 (1991); *LoDico v Caputi*, 129 AD2d 361, 362-364; 517 NYS2d 640 (1987); *Ervin v American Guardian Life Assurance Co*, 376 Pa Super 132, 135-136; 545 A2d 354 (1988); *Martinez v Lewis*, 969 P2d 213, 219 (Colo, 1998).

This seems appropriate. In the particularized setting of an IME, the physician's goal is to gather information for the examinee or a third party for use in employment or related financial decisions. It is not to provide a diagnosis or treatment of medical conditions.

In addition, the IME physician often examines the patient under circumstances that are adversarial, such as in the instant case. Thus, if the duties that arise in a

7

regular physician-patient relationship were imposed on the IME physician, an unacceptable risk would exist.  The examinee, disagreeing with the diagnosis, could sue and recover from the IME physician.  Some courts have explicitly recognized this risk.  As stated in *Hafner*, 185 Ariz 391-392:

> If an IME practitioner's evaluations, opinions, and reports could lead not only to vehement disagreement with and vigorous cross-examination of the practitioner in the claims or litigation process, but also to his or her potential liability for negligence, the resulting chilling effect could be severe. To permit such an action by expanding the concept of duty in this type of case would be, at best, ill-advised. At worst, the fears expressed in *Davis v Tirrell*, 110 Misc 2d 889, 895-96; 443 NYS2d 136, 140 (Sup Ct., 1981) may be realized:

> "To permit such an action would make it impossible to find any expert witness willing to risk a lawsuit based on his testimony as to his opinions and conclusions before any tribunal. And such cause of action if permitted would lead to an endless stream of litigation wherein defeated litigants would seek to redeem loss of the main action by suing to recover damages from those witnesses whose adverse testimony might have brought about the adverse result."[4]

---

[4]Also "[t]he general rule is that the physician who is retained by a third party to conduct an examination of another person and report the results to the third party does not enter into a physician-patient relationship with the examinee and is not liable to the examinee for any losses he suffers as a result of the conclusions the physician reaches or reports." [*Ervin*, 376 Pa Super 136 (citations omitted).]

Likewise, other courts, including our Court of Appeals, have apparently recognized that the general duty of diagnosis and treatment is inappropriate in the IME setting given the purpose of the examination. See *Rogers*, 65 Mich App 646; *Ervin*, 376 Pa Super 139; *Lee v New York*, 162 AD2d 34, 35-38; 560 NYS2d 700 (1990).

As correctly noted by the Court of Appeals here, however, the lack of a traditional physician-patient relationship has not normally been used to absolve an IME physician of all responsibility. Many cases recognize a duty of the physician "to 'conduct the examination in a manner not to cause harm to the person being examined.'" *Greenberg*, *supra* 845 P2d 535, quoting *Rand v Miller*, 185 W Va 705, 707; 408 SE2d 655 (1991). See also *Mero v Sadoff*, 31 Cal App 4th 1466, 1478; 37 Cal Rptr 2d 769 (1995); *Ramirez v Carreras*, 10 SW3d 757, 760 (Tex App, 2000).

We find persuasive the cases that recognize a limited physician-patient relationship. The limited relationship imposes fewer duties on the examining physician than does a traditional physician-patient relationship. But it still requires that the examiner conduct the examination in such a way as not to cause harm.

The patient is not in a traditional professional relationship with the physician. Nonetheless, he places his physical person in the hands of another who holds that

9

position solely because of his training and experience. The recognition of a limited relationship preserves the principle that the IME physician has undertaken limited duties but that he has done so in a situation where he is "expected to exercise reasonable care commensurate with his experience and training." *Reed*, 166 NJ 106.

Moreover, the recognition that an IME physician does have a limited professional relationship with the examinee provides additional benefits to both the examiner and the examinee. It obviates the necessity of attempting to distinguish artificially between claims of malpractice by an independent medical examiner and claims against other physicians involving similar conduct.

For example, here the Court of Appeals, correctly recognizing that defendant owed a duty to plaintiff absent the traditional physician-patient relationship, categorized the plaintiff's claim as one of ordinary negligence. It may have sought to do so because it recognized earlier courts' unwillingness to recognize a limited professional relationship in similar situations. However, the actions of defendant here more properly fit within the realm of medical malpractice than ordinary negligence.

In general, where a professional relationship exists, the differentiation between a medical malpractice claim and an ordinary negligence claim depends on "whether the facts

10

allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment." *Dorris,* 460 Mich 46 (citations omitted). See also *Id.,* 49 (Kelly, J., concurring in part and dissenting in part).

In the case before us, defendant's examination of plaintiff called upon defendant's professional judgment. The facts plaintiff alleges indicate that defendant made the medical decision to fully rotate plaintiff's arm to examine its range of motion, despite the caution of plaintiff's treating physician. Such allegations "raise questions involving medical judgment." *Dorris, supra,* 460 Mich 46. They more properly fit within a medical malpractice cause of action.[5]

## IV. Conclusion

In making our determination, we have considered the case law and the differentiation under Michigan law between ordinary negligence and medical malpractice. We have recognized a limited physician-patient relationship in the

---

[5]This is not to say that an IME physician, like any health professional, cannot be held liable for ordinary negligence under other circumstances. For example, during oral argument a question was raised regarding a scenario in which an injury is caused when the IME physician overturns a medicine cabinet onto the examinee. Here, however, the injury and alleged negligence occurred during the examination itself and were directly related to defendant's exercise of his professional services. Hence, the facts cause plaintiff's claim to sound in medical malpractice.

IME setting.  Our use of the word "limited" acknowledges the lack of a traditional physician-patient relationship in that setting.  Also, it avoids creating an artificial distinction between the acts of independent medical examiners and other treating physicians.

If the IME physician's alleged negligence sounds in malpractice, he will be able to avail himself of the evidentiary protections the Legislature has granted to physicians in other circumstances.  See, e.g., MCL 600.2912b; MCL 600.2912d.  At the same time, the ability to forecast the type of action involved in the IME setting will avoid, for future plaintiffs, the confusion that occurred here.

In this case, the Court of Appeals correctly noted the existence of a limited duty, notwithstanding the absence of a traditional physician-patient relationship.  Where the Court of Appeals erred was in failing to recognize that the duty arises from the examining physician's limited professional relationship with the examinee.  Contrary to the ruling of the Court of Appeals, this relationship may give rise to a claim for medical malpractice rather than for ordinary negligence, as this Court has recognized the distinction.

The limited relationship encompasses a duty by the examiner to exercise care consistent with his professional

training and expertise so as not to cause physical harm by negligently conducting the examination. Thus, we overrule *Rogers* and its progeny to the extent that they are inconsistent with this decision.

The judgment of the Court of Appeals is reversed, plaintiff's medical malpractice claim is reinstated, and the case is remanded to the trial court for further proceedings.

> Marilyn Kelly
> Maura D. Corrigan
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

13