PRESENT:  All the Justices

NANCY J. HARRIS
                                          OPINION BY
v.  Record No. 050715            JUSTICE G. STEVEN AGEE
                                       January 13, 2006
JEFFREY SCOTT KREUTZER, Ph.D.

            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        H. Vincent Conway, Jr., Judge

        Nancy J. Harris appeals from the judgment of the Circuit

Court of the City of Newport News which granted the demurrer of

the defendant, Jeffrey S. Kreutzer, Ph.D., and dismissed her

motion for judgment with prejudice.  For the reasons set forth

below, we will affirm the judgment of the trial court dismissing

Count III of the motion for judgment alleging intentional

infliction of emotional distress, but will reverse that portion

of the judgment which dismissed Count I alleging medical

malpractice.

        I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

    Harris alleged she sustained a traumatic brain injury as

the result of an automobile accident in 1991. She brought a

personal injury action in 1992 seeking damages resulting from

that accident.[1]  The trial court in that case granted the

defendant's request and ordered Harris to undergo a medical

examination pursuant to Rule 4:10 of the Rules of the Supreme

_____

    [1] In the underlying automobile accident case, the jury
awarded Harris a judgment of $300,000, plus interest of
$113,769.66, for a total of $413,769.66, against the defendant,
John E. Stickler.  Stickler is not a party to this appeal.

1

Court of Virginia[2] to determine the nature and extent of her claimed brain injury. The defendant in the automobile accident case retained Dr. Kreutzer, a licensed clinical psychologist with a subspecialty in neuropsychology, to conduct the examination. The case at bar concerns Harris' claims against Dr. Kreutzer for his conduct of the court-ordered examination on January 19, 1996 ("the Rule 4:10 examination").

On February 7, 2003, Harris filed the present motion for judgment against Dr. Kreutzer, alleging separate counts of medical malpractice, defamation,[3] and intentional infliction of emotional distress arising out of the Rule 4:10 examination.[4] Harris contends that Dr. Kreutzer, in undertaking the Rule 4:10 examination, owed a duty to her to exercise reasonable and ordinary care and to avoid causing her harm in the conduct of the examination. She further contends that Dr. Kreutzer knew of

---

[2] The court-ordered examination is covered by Rule 4:10(a), which states in pertinent part as follows:
   When the mental or physical condition . . . of a party
   . . . is in controversy, the court in which the action
   is pending, upon motion of an adverse party, may order
   the party to submit to a physical or mental
   examination . . . .

[3] The trial court granted Dr. Kreutzer's demurrer as to the defamation count, Count II, and dismissed it with prejudice. Harris does not appeal that portion of the trial court's judgment.

[4] Harris originally filed suit against Dr. Kreutzer in December of 1997 alleging similar complaints to those in the case at bar. After amending her complaint twice, Harris non-suited her case at a hearing held on March 27, 2002, and the final order was entered on August 13, 2002.

her pre-existing mental and emotional conditions[5] and knew that she would be susceptible to further harm if treated in an abusive manner during the examination.

Regarding the medical malpractice claim ("Count I"), the motion for judgment specifically alleges that Dr. Kreutzer "verbally abused [Harris], raised his voice to her, caused her to break down into tears in his office, stated she was 'putting on a show,' and accused her of being a faker and malingerer." Harris contends that despite his knowledge of her condition, Dr. Kreutzer "intentionally aggravated her pre-existing condition and her post-traumatic stress disorder and her brain injury."

Further, Harris also contends Dr. Kreutzer breached his duty to her in the conduct of the Rule 4:10 examination because he "failed to comply with the applicable standard of care within his profession in that he:  a. failed to appropriately examine and evaluate the mental status of the plaintiff . . . and d. was deliberately abusive to plaintiff with disregard for the consequences of his conduct."  As a result, Harris claims her mental and physical health "drastically deteriorate[d]."

Harris averred in Count III of the motion for judgment that Dr. Kreutzer's conduct during the Rule 4:10 examination was

---

[5] Besides allegedly suffering from a traumatic brain injury due to the automobile accident, Harris had a medical history of a nervous problem, had been the victim of armed robberies, suffered from post-traumatic stress disorder, and was suicidal.

"intentionally designed to inflict emotional distress upon [her] or was done with reckless disregard for the consequences when he knew or should have known that emotional distress would result." ("Count III"). Furthermore, Harris contended Dr. Kreutzer's conduct was outrageous and the resulting emotional distress she suffered was severe.

Dr. Kreutzer filed a demurrer to the motion for judgment specifically arguing that a Rule 4:10 examination did not create a physician-patient relationship, so he owed no legally cognizable duty to Harris. Thus, Dr. Kreutzer contended Count I stated no claim for medical malpractice as a matter of law. In the alternative, Dr. Kreutzer averred that if, arguendo, a claim for medical malpractice could exist in a Rule 4:10 context, Harris nevertheless "fails to allege any facts which constitute a breach of the standard of care required of a reasonably prudent clinical psychologist."

As to Count III, Dr. Kreutzer argued that Harris failed to allege facts which would support a claim for the tort of intentional infliction of emotional distress. Specifically, Dr. Kreutzer contended that the motion for judgment did not show his conduct was outrageous or that Harris' injuries were severe.

After a hearing, the trial court granted Dr. Kreutzer's demurrer as to all counts and dismissed Harris' motion for judgment with prejudice by an Order entered January 7, 2005,

4

which incorporated its bench ruling.  The trial court did not specifically find, in the bench ruling or in the order, that a cause of action for medical malpractice was cognizable for conduct during a Rule 4:10 examination.  The trial court opined, however, that "I understand that there can be situations in which a cause of action is stated even with an IME.  The Court is of the opinion that this is not such an example."[6]  The trial court then stated, "I don't see the proper factual allegations to support . . . either count one or count three."

We awarded Harris this appeal.

## II.  STANDARD OF REVIEW

A demurrer tests the legal sufficiency of a motion for judgment and admits the truth of all material facts that are properly pleaded.  Elliott v. Shore Stop, Inc., 238 Va. 237, 239-40, 384 S.E.2d 752, 753 (1989).  The facts admitted are those expressly alleged, those that are impliedly alleged, and those that may be fairly and justly inferred from the facts alleged.  Id. at 240, 384 S.E.2d at 753.  "The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [motion for judgment], but only may determine whether the factual allegations of the [motion]

[6] "IME" is an acronym used in some jurisdictions for the term "independent medical examination," Black's Law Dictionary 764 (8th ed. 2004), a reference to court-ordered physical or mental examination of a person.

5

are sufficient to state a cause of action." Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000).

A trial court's decision sustaining a demurrer presents a question of law which we review de novo. Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Furthermore, like the trial court, we are confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged. See Elliot, 238 Va. at 240, 384 S.E.2d at 753.

### III. ANALYSIS

On appeal, Harris assigns error to the trial court's grant of the demurrer to Counts I and III. She avers that the trial court erred as to Count I because Dr. Kreutzer "owed a duty to Harris to conduct the examination in a manner not to cause [her] harm." In addition, Harris asserts her motion for judgment alleged sufficient facts to show Dr. Kreutzer "had breached that duty, that he breached the standard of care, and that Harris suffered damage as a result." Harris also contends the trial court erred in granting the demurrer as to Count III because her motion for judgment did state "a cause of action for intentional infliction of emotional distress under Virginia law." We address each assignment of error in turn.

6

A.    Medical Malpractice – Count I

The initial issue raised by the assignment of error as to Count I is a matter of first impression in Virginia:  Is there a cognizable cause of action sounding in medical malpractice for the conduct of a Rule 4:10 examination?  In resolving this question, we find guidance in our existing malpractice jurisprudence, the language of the medical malpractice statutes, Code § 8.01-581.1, et seq., and decisions from other states which have addressed this issue.

Harris acknowledges that "medical malpractice cases arise out of consensual physician-patient relationships" [7] and that a Rule 4:10 examination does not involve a "traditional physician/patient relationship."  Nonetheless, Harris argues that "[t]he limited relationship between the examiner and the plaintiff encompasses a duty by the examiner to exercise care

_____

[7] Many decisions in Virginia and other states address the existence of a duty in a medical malpractice context in light of the physician/patient relationship, although other health care providers are covered by the medical malpractice statutes.  The definitional provision of Virginia's malpractice statute, Code § 8.01-581.1, separately defines the terms "health care provider", "patient" and "physician".  A "physician" is included within the more comprehensive term "health care provider" which also includes a licensed clinical psychologist such as Dr. Kreutzer.  We use the term "physician" in this opinion to include Dr. Kreutzer and other health care providers, who are not "physicians," to maintain continuity with the language of the parties and that of the cases which address the issue of malpractice in the context of a Rule 4:10 examination.  At a later point, we will examine the statutory terms in more detail, addressing the plain language of Code § 8.01-581.1.

7

consistent with his professional training and expertise so as not to cause physical harm by negligently conducting the examination."

Harris cites to other jurisdictions which unanimously hold that "a physician owes a duty of care to a nonpatient examinee to 'conduct [a court-ordered] examination in a manner not to cause harm to the person being examined.' "  Harris posits as a "reasonable rule" in Virginia "that physicians conduct their Rule 4:10 examinations in a manner not to cause harm to the people being examined."

Harris argues that a cause of action for medical malpractice is properly pled if it is alleged that the defendant physician breached the duty to cause no harm in the conduct of the examination by violating the applicable standard of care. As in any other medical malpractice action, the plaintiff has the burden to show the standard of care and that the physician's alleged violation of the standard of care in conducting the examination proximately caused the alleged injury.  See Bryan v. Burt, 254 Va. 28, 34, 486 S.E.2d 536, 539-40 (1997).  Assuming she has properly pled a cause of action for malpractice, Harris maintains her motion for judgment stated facts sufficient to survive a demurrer to Count I.

Dr. Kreutzer responds that Harris' claim under Count I must fail as a matter of law because a cause of action for

malpractice requires a consensual physician/patient relationship. He notes that Harris alleged no consensual relationship. Indeed, Dr. Kreutzer contends that no consensual physician/patient relationship can exist in a Rule 4:10 examination because it is by its very nature adversarial. In the absence of such a relationship, Dr. Kreutzer posits that he owed no duty to Harris in the conduct of the Rule 4:10 examination, and therefore no claim for malpractice can lie as a matter of law.

Next, Dr. Kreutzer argues that even if one assumes, arguendo, that a cause of action for malpractice may arise for the conduct of a Rule 4:10 examination, the trial court correctly held that the motion for judgment failed to state facts which would support a claim that he deviated from the applicable standard of care.

A number of states have addressed the issue whether a physician owes a duty to the person examined in a court-ordered medical examination, which if breached, establishes a cause of action for malpractice. While all the courts addressing this issue have found a cause of action to exist, the denomination of the basis of that cause of action has not been uniform.[8] As the

---

[8] See, e.g., Keene v. Wiggins, 138 Cal. Rptr. 3 (Cal. Ct. App. 1977); Martinez v. Lewis, 969 P.2d 213 (Colo. 1998); Greenberg v. Perkins, 845 P.2d 530 (Colo. 1993); Smith v. Welch, 967 P.2d 727 (Kan. 1998); Hoover v. Williamson, 203 A.2d 861

9

Supreme Court of Colorado noted in Greenberg v. Perkins, 845

P.2d 530, 535 (Colo. 1993), "[t]he cases that consider the duty

of care issue in circumstances where a physician conducts a

medical examination of a person at the request of an employer,

insurer, or other third person are remarkable for the diversity

of their analyses."

In the case at bar, the trial court made no explicit ruling

that a cause of action sounding in malpractice exists in a Rule

4:10 setting.  However, the trial court implied that a cause of

action does exist by its statement that Harris' motion for

judgment failed to survive the demurrer because insufficient

facts were pled to support it.  Therefore, we begin our analysis

with an inquiry as to whether a cause of action for medical

malpractice may be recognized in a Rule 4:10 context in

Virginia.  We conclude that such a cause of action can lie under

the appropriate facts.

Dr. Kreutzer is correct that our prior cases have noted

that a physician's liability for malpractice is predicated upon

---

(Md. Ct. App. 1964); Dyer v. Trachtman, 679 N.W.2d 311 (Mich.
2004); Henkemeyer v. Boxall, 465 N.W.2d 437 (Minn. Ct. App.
1991); Webb v. T.D., 951 P.2d 1008 (Mont. 1997); Beadling v.
Sirotta, 197 A.2d 857 (N.J. 1964); Ferguson v. Wolkin, 499
N.Y.S.2d 356 (N.Y. Sup. Ct. 1986); Twitchell v. MacKay, 434
N.Y.S.2d 516 (N.Y. App. Div. 1980); Meinze v. Holmes, 532 N.E.2d
170 (Ohio Ct. App. 1987); Ervin v. American Guardian Life
Assurance Co., 545 A.2d 354 (Pa. Super. Ct. 1988); Lotspeich v.
Chance Vought Aircraft, 369 S.W.2d 705 (Tex. Ct. App. 1963);
Judy v. Hanford Envtl. Health Found., 22 P.3d 810 (Wash. Ct.
App. 2001); Rand v. Miller, 408 S.E.2d 655 (W. Va. 1991).

an initial finding that a consensual agreement exists between physician and patient, establishing a relationship from which flows the physician's duty of care. "A physician's duty arises only upon the creation of a physician-patient relationship; that relationship springs from a consensual transaction, a contract, express or implied, general or special . . . ." Lyons v. Grether, 218 Va. 630, 633, 239 S.E.2d 103, 105 (1977); accord Didato v. Strehler, 262 Va. 617, 626, 554 S.E.2d 42, 47 (2001).

While a physician/patient relationship between Dr. Kreutzer and Harris did not exist in the traditional sense, that factor is not dispositive in a Rule 4:10 examination setting. Although a Rule 4:10 examination will rarely involve an express consensual contract between the physician and the examinee, the consensual nature of the physician/patient relationship may be "express or implied." Under the facts of this case, Harris' consent was implied, and Dr. Kreutzer's consent was express so as to establish a limited physician/patient relationship for the Rule 4:10 examination.

By filing her motion for judgment in the automobile accident case, Harris consented to the requirements of the Rules of the Supreme Court of Virginia for the prosecution of her suit. See Rule 3:1. When a plaintiff places her "mental or physical condition . . . in controversy" by filing suit, she expresses an implied consent to a medical examination under Rule

11

4:10.[9]  Under the Rules, a plaintiff must, under proper circumstances, submit to an examination or her action may be dismissed.  Rule 4:12(b)(2).  By bringing her personal injury action, Harris gave her implied consent to the Rule 4:10 examination and formed a limited relationship with Dr. Kreutzer for purposes of the examination.

A physician or health care provider, such as Dr. Kreutzer, who performs a Rule 4:10 examination, expressly consents to a relationship with the examinee when he agrees to conduct the examination.  Therefore, we conclude there is a consensual relationship between the physician and the examinee as patient for the performance of the Rule 4:10 examination.

We next determine, in the context of the Rule 4:10 examination relationship, whether the physician has a duty cognizable under the malpractice statutes, Code § 8.01-581.1, et seq., the breach of which establishes a cause of action for malpractice for the conduct of the examination.  We look to the statutorily defined terms establishing an act of malpractice.

Code § 8.01-581.1 defines malpractice as "any . . . action for personal injuries . . . based on health care or professional services rendered . . . by a health care provider, to a patient."  We conclude that conduction of the Rule 4:10

---

[9] No issue is raised on appeal that good cause was not shown for the Rule 4:10 examination although Harris did object in the trial court to being required to submit to the examination.

12

examination is "health care" rendered by a "health care provider," in the person of Dr. Kreutzer, to a "patient," Harris.

The statute defines "Health care" as "any act . . . performed . . . by any health care provider for [or] to . . . a patient during the patient's medical diagnosis."  The Rule 4:10 examination is an "act" by Dr. Kreutzer for a medical diagnosis of Harris because her "mental or physical condition . . . is in controversy."  While a court orders the medical diagnosis for its own benefit and the benefit of the other parties to the litigation, neither Rule 4:10 nor Code § 8.01-581.1 limits the acts constituting "health care" to medical diagnoses undertaken only for the patient's benefit.  Thus, we find a Rule 4:10 examination is "health care" within the meaning of Code § 8.01-581.1.

As "a person . . . licensed by this Commonwealth to provide health care . . . as a . . . clinical psychologist," Dr. Kreutzer is a "health care provider" under Code § 8.01-581.1. Harris is a "patient" because she is a "natural person who receives or should have received health care [(the Rule 4:10 examination)] from a licensed health care provider."  Id. Accordingly, under the plain language of the malpractice statute, Code § 8.01-581.1, a cause of action for malpractice may lie in the context of a Rule 4:10 examination because

13

"health care" is provided by a "health care provider" to a "patient" which allegedly resulted in personal injury.

Although a malpractice cause of action may lie for the conduct of a Rule 4:10 examination, the scope of such a cause of action is very limited. This is true, in part, because the nature of the physician/patient relationship in a Rule 4:10 examination is strictly circumscribed. As the Supreme Court of Michigan noted in its consideration of this issue, the physician/patient relationship relative to a court-ordered examination

> does not involve the full panoply of the physician's typical responsibilities to diagnose and treat the examinee for medical conditions. The IME physician, acting at the behest of a third party, is not liable to the examinee for damages resulting from the conclusions the physician reaches or reports. . . .
>
> . . . .
>
> The patient is not in a traditional professional relationship with the physician. Nonetheless, he places his physical person in the hands of another who holds that position solely because of his training and experience. The recognition of a limited relationship preserves the principle that the IME physician has undertaken limited duties but that he has done so in a situation where he is "expected to exercise reasonable care commensurate with his experience and training."

Dyer v. Trachtman, 679 N.W.2d 311, 314-15, 316 (2004) (citation omitted).

The physician's professional duty in the conduct of a Rule 4:10 examination relates solely to the actual performance of the

14

examination.  Unlike a physician in a traditional physician/patient relationship, a Rule 4:10 examiner has no duty to diagnose or treat the patient, and no liability may arise from his report or testimony regarding the examination.  Because the Rule 4:10 examination functions only to ascertain information relative to the underlying litigation, the physician's duty in a Rule 4:10 setting is solely to examine the patient without harming her in the conduct of the examination.

Cases from other jurisdictions are clear that an examining physician's only duty is to do no harm in the conduct of the examination, and any malpractice liability is restricted to a breach of that duty only.  For instance, in Dyer, the physician conducting the court-ordered examination allegedly knew the examinee had significant restricted movement in his arm and shoulder.  679 N.W.2d at 313.  Nonetheless, the physician allegedly rotated the patient's arm and shoulder well beyond prescribed limits, injuring the patient and breaching the standard of care.  Id.  The Michigan Supreme Court found a cause of action in malpractice rightly accrues when an examining physician fails to follow the applicable standard of care in the actual conduct of the examination resulting in actual harm to the patient.  Id. at 317.

By contrast, the Minnesota Court of Appeals in Henkemeyer v. Boxall, 465 N.W.2d 437, 438-39 (Minn. Ct. App. 1991), found

15

no cause of action in malpractice for the conduct of a court-ordered examination when the plaintiff alleged that the physician failed to diagnose and inform the examinee of a medical condition the physician discovered, or should have discovered, while conducting the examination. The court in Henkemeyer concluded the examining physician owed no duty to the patient to diagnose the patient for the patient's benefit. Id. at 439. No action for malpractice existed when the actual conduct of the examination did not harm the patient. Id.

Limiting Rule 4:10 malpractice liability solely to harm in the actual conduct of the examination recognizes the policy imperative that Rule 4:10 malpractice actions not be used to intimidate physicians from undertaking court-ordered examinations or to manipulate the outcome of such an examination. We agree with the cogent analysis by the Court of Appeals of Arizona on this point:

> If an IME practitioner's evaluations, opinions, and reports could lead not only to vehement disagreement with and vigorous cross-examination of the practitioner in the claims or litigation process, but also to his or her potential liability for negligence, the resulting chilling effect could be severe. To permit such an action by expanding the concept of duty in this type of case would be, at best, ill-advised. At worst, the fears expressed in *Davis v. Tirrell*, 110 Misc. 2d 889, 895-96, 443 N.Y.S.2d 136, 140 (Sup. Ct. 1981) may be realized:
>
>> "To permit such an action would make it impossible to find any expert witness willing to risk a lawsuit based on his

16

> testimony as to his opinions and conclusions before any tribunal. And such cause of action if permitted would lead to an endless stream of litigation wherein defeated litigants would seek to redeem loss of the main action by suing to recover damages from those witnesses whose adverse testimony might have brought about the adverse result."

Hafner v. Beck, 916 P.2d 1105, 1107-08 (Ariz. Ct. App. 1995).

In summary, we hold that a cause of action for malpractice may lie for the negligent performance of a Rule 4:10 examination.[10] However, a Rule 4:10 physician's duty is limited solely to the exercise of due care consistent with the applicable standard of care so as not to cause harm to the patient in actual conduct of the examination.

Having determined that Harris may bring a cause of action sounding in malpractice for harm she alleges was done during the Rule 4:10 examination, we next review whether the trial court erred in ruling that the factual allegations of her motion for judgment were insufficient, as a matter of law, to state such a cause of action. We conclude Harris' factual allegations were

---

[10] We note that the Rule 4:10 examination cause of action lies in malpractice and is not one of ordinary negligence in Virginia. In that regard, we agree with the conclusion of the Supreme Court of Michigan in Dyer that claims concerning the actual conduct of the Rule 4:10 examination "raise questions involving medical judgment" and "more properly fit within the realm of medical malpractice than ordinary negligence." 679 N.W.2d at 317.

17

sufficient to survive the demurrer, and the trial court erred in ruling otherwise.

Harris alleged that Dr. Kreutzer "failed to comply with the applicable standard of care within his profession in that he failed to appropriately examine and evaluate the mental status of the plaintiff" and "fail[ed] to provide appropriate psychological care in performing his examination and evaluation."  Specifically, Harris averred Dr. Kreutzer "verbally abused [her], raised his voice to her, caused her to break down in tears in his office, stated she was 'putting on a show', and accused her of being a faker and malingerer" during the Rule 4:10 examination, despite his alleged prior knowledge of her fragile mental and emotional state.  If such conduct was proven at trial, and appropriate expert testimony showed such conduct breached the applicable standard of care for a reasonably prudent clinical psychologist in Virginia, then a trier of fact could conclude that malpractice occurred within the limited scope of a Rule 4:10 examination as described above.

In short, Harris' motion for judgment alleged that Dr. Kreutzer breached the applicable standard of care by his specific acts during the Rule 4:10 examination.  Harris averred that as a "direct and proximate result" of that breach, she "sustained severe psychological trauma and mental anguish affecting her mental and physical well-being."  Specifically,

18

she suffered "nightmares, difficulty sleeping and extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling" as a "direct result" of Dr. Kreutzer's conduct.

Therefore, we conclude that Harris pled sufficient facts to sustain a cause of action for malpractice in the conduct of a Rule 4:10 examination. She pled that the defendant breached the applicable standard of care "within his profession" by stating specific acts of conduct which were the alleged proximate cause of her claimed injuries. Accordingly, her motion for judgment was sufficient to withstand a demurrer, and the trial court erred in granting the demurrer and dismissing Count I.

B.  Intentional Infliction of Emotional Distress

In Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974), this Court recognized intentional infliction of emotional distress as a cause of action in Virginia. This tort requires four elements to be proved:  (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. Id. Our conclusion in Womack was reaffirmed in Ruth v. Fletcher, 237 Va. 366, 373, 377 S.E.2d 412, 415 (1989) (quoting Bowles v. May, 159 Va. 419, 438, 166 S.E. 550, 557 (1932)), that "[b]ecause of the risks inherent

19

in torts where injury to the mind or emotions is claimed, such torts [are] 'not favored' in the law." As a consequence, we further noted in Russo v. White, 241 Va. 23, 28, 400 S.E.2d 160, 163 (1991), that unlike a claim for negligence, a plaintiff bringing a claim for intentional infliction of emotional distress must allege all facts necessary to establish the cause of action to withstand challenge on demurrer.

Harris claims that Count III sufficiently alleges all four of the elements set forth in Womack. We disagree. Assuming Harris has sufficiently pled the first and third elements, it is clear her motion for judgment fails to correctly plead outrageous conduct or severe emotional distress.

The outrageousness requirement "is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." Womack, 215 Va. at 342, 210 S.E.2d at 148. "[I]t is insufficient for a defendant to have acted with an intent which is tortious or even criminal." Russo, 241 Va. at 27, 400 S.E.2d at 162 (internal quotation marks and citation omitted). Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation omitted). "It is for the court to determine, in the first

20

instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." Womack, 215 Va. at 342, 210 S.E.2d at 148.

In her motion for judgment, Ms. Harris claims that Dr. Kreutzer "verbally abused [her], raised his voice to her, caused her to break down into tears . . . , stated she was 'putting on a show', and accused her of being a faker and malingerer." Harris contends this conduct was outrageous and intolerable. Assuming Dr. Kreutzer did all Harris alleges, we find his conduct was not "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." Russo, 241 Va. at 27, 400 S.E.2d at 162. Insensitive and demeaning conduct does not equate to outrageous behavior as set by our caselaw. See generally id. Harris therefore failed to allege facts sufficient to meet the Womack standard for outrageous and intolerable conduct.

Furthermore, Harris failed to plead facts sufficient to support the severity element. In her motion for judgment, Harris alleged she suffered severe psychological trauma and mental anguish affecting her mental and physical well-being. Symptoms of her anguish include nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling. In addition, she claims

21

to have suffered mortification, humiliation, shame, disgrace, and injury to reputation.

As we explained in Russo, liability for intentional infliction of emotional distress "arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." 241 Va. at 27, 400 S.E.2d at 163. In that case, we held that a plaintiff complaining of nervousness, sleep deprivation, stress and its physical symptoms, withdrawal from activities, and inability to concentrate at work failed to allege a type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it. Id. at 28, 400 S.E.2d at 163. Harris alleges nearly identical symptoms in the case at bar and fails to allege injuries that "no reasonable person could be expected to endure." As a result, she fails to allege facts sufficient to satisfy the fourth element of the Womack test.

Because Harris failed to state facts sufficient to establish that Dr. Kreutzer's conduct was outrageous or that her distress was severe, the trial judge properly granted Dr. Kreutzer's demurrer as to Count III alleging intentional infliction of emotional distress.

IV. CONCLUSION

22

We conclude that the trial court erred in granting the demurrer as to Court I, but properly granted the demurrer as to Count III. Therefore, we will affirm the judgment of the trial court dismissing Count III and will reverse the judgment dismissing Count I. We will remand the case as to Count I for further proceedings in accord with our opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>