# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

TradeStaff & Co.,
d/b/a 1800SKILLED.com

v.

Seth Nogiec,
Chipton Ross, Inc.,
and C. A. Jones, Inc.

September 4, 2008

Case No. CL08-1512

BY JUDGE MARJORIE A. T. ARRINGTON

This matter is before the Court on defendants' Joint Demurrer. The Court heard arguments on August 13, 2008, and took the issue under advisement. After reviewing the case law and considering argument of counsel, the Court stands ready to make a decision.

*Standard of Review*

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Further, a demurrer "admits the truth of the facts contained in the pleading to which it is

addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Taboada v. Daily Seven, Inc.*, 271 Va. 313, 317, 626 S.E.2d 428, 429 (2006); *Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006). A trial court is "not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [Complaint], but only may determine whether the factual allegations of the [Complaint] are sufficient to state a cause of action." *Harris*, 271 Va. at 195–96, 624 S.E.2d at 24 (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000)).

*Facts*

Taking all of the allegations in plaintiff's complaint as true, the following facts are relevant to the demurrer. On January 5, 2004, 1800SKILLED hired Nogiec to work as a Marine Division Manager in its Virginia Beach office. As a condition of his employment, Nogiec signed an "Employee Restrictive Covenant" on January 5, 2004. The "Employee Restrictive Covenant" stated, in relevant part, that:

> Employee . . . agrees that for a period of two years after termination of his/her employment with TradeStaff in any manner, whether with or without cause, voluntary, involuntary, or by mutual consent, the employee will not, within the State of Virginia, or any other state where TradeStaff provides labor, directly or indirectly engage in the business of providing labor personnel, including but not limited to, carpenters, electricians, plumbers, general laborers, masons, etc. to companies performing work in the construction industry, (i.e. "Labor provider"), or in any business competitive with TradeStaff. Directly or indirectly engaging in the business of "labor provider" or in any competitive business shall include engaging in such business as an owner, partner, or agent, or as an employee of any person, firm, or corporation engaged in such business or in being interested directly or indirectly in any such business conducted by any person, firm, or corporation.

(Am. Compl. Ex. 1.)

On May 12, 2006, Nogiec quit his employment with 1800SKILLED. Nogiec, however, was subsequently re-hired by 1800SKILLED on January 15, 2007. At this time, agents of 1800SKILLED and Nogiec orally agreed that

Nogiec would be returning to employment on the same terms as he had previously worked under, including the restrictive covenant, creating an oral contract between the parties. Plaintiff styles this as the "Rehire Agreement." Defendant Nogiec did not execute any new written documents upon re-hire. On January 29, 2008, Nogiec commenced work for plaintiff. As part of Nogiec's duties, he cultivated relationships with customers throughout the Hampton Roads area, both procuring new contracts and placing employees with new and old customers. On June 6, 2008, Nogiec again quit employment with 1800SKILLED and shortly thereafter became employed by Chipton Ross and/or C. A. Jones. Chipton Ross and C. A. Jones are competitors of 1800SKILLED. As a consequence, plaintiff filed this lawsuit alleging five causes of action including (I) breach of contract, (II) tortious interference with a contractual relationship, (III) statutory conspiracy, (IV) common law conspiracy, and (V) breach of fiduciary duties.

## Arguments

Defendants argue on demurrer that Counts I through IV should be dismissed because (1) the written agreement attached to the Amended Complaint does not apply because it has expired, (2) the oral agreement is barred by the statute of frauds, and (3) the restrictive covenant is overly broad and unenforceable.

Plaintiff counters that (1) the written contract is incorporated into the oral contract, (2) the oral contract is not barred by the statute of frauds because it could be performed within a year by 1800SKILLED and (3) that the restrictive covenant is enforceable because it is reasonable and related to a legitimate business interest.

## Discussion

### A. *Statute of Frauds*

The Virginia Statute of Frauds states that "[u]nless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought . . . [u]pon any agreement that is not to be performed within a year." Va. Code § 11-2(8) (1950). In *Greenbrier Farms v. Clarke*, 193 Va. 891, 895, 71 S.E.2d 167 (1952), the Court held that "an agreement does not fall within the statute [of frauds] if that which one of the parties is to do is all to be performed within a year; in other words, the agreement must contemplate non-performance by both parties within the year."

Defendants cite *Falls v. Virginia State Bar*, 240 Va. 416, 397 S.E.2d 671 (1990), for the proposition that the contract could not be performed within a year, and therefore the agreement falls within the statute of frauds. In *Falls*, the alleged agreement was for employment that was not at will. Both parties then, in order to perform the contract, could do so only beyond a year. The Court distinguished between performance and termination of an employee, finding that an end to the contract in a lesser period of time would be a termination. *Id.* at 673.

This matter deals with an alleged at-will employment contract. In at-will employment, there is no requirement that the employer hire, or the employee work, for any length of time. Therefore, the employer could fully perform the contract within a year by hiring and firing Nogiec with or without cause within a year. *See, e.g., Farm Veterinary Services, Inc. v. Novak*, 61 Va. Cir. 584 (Franklin County 2001) (holding that a non-compete contract that extending three years after a termination of employment was outside the statute of frauds.) Therefore, this agreement is outside the statute of frauds and need not be in writing.

## B. *Breach of Contract*

Under Virginia law, reasonably drafted covenants not to compete are enforceable and construction of such covenants is a matter of law. *See, e.g., Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 389 S.E.2d 467 (1990). However, covenants in restraint of trade are not favored, will be strictly construed, and, in the event of an ambiguity, will be construed in favor of the employee. *Richardson v. Paxton Co.*, 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962). When "the non-compete clause is ambiguous and susceptible to two or more differing interpretations, at least one of which is functionally overbroad, the clause is unenforceable." *Landmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 531 (E.D. Va. 2006); *see also Omniplex World Servs. Corp. v. United States Investigations Servs., Inc.*, 270 Va. 246, 249, 618 S.E.2d 340 (2005). To enforce a restrictive covenant, the employer has the burden of proving that "the restraint is no greater than necessary to protect the employer's legitimate business interest, is not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and is reasonable in light of sound public policy." *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 493, 561 S.E.2d 694 (2002). A non-compete agreement "requires consideration of the restriction in terms of function, geographic scope, and duration." *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666 (2001).

While generally courts should gather factual evidence to determine the reasonableness of a restrictive covenant and to balance the interests of the employee and the employer, some non-competition clauses are so overly broad on their face that a factual hearing is not necessary. *See, e.g., Mantec v. Cantol, Inc.*, 2006 U.S. Dist. LEXIS 24648, at *12 (E.D. Va. 2006); *Lawrence v. Business Communications of Va., Inc. v. Smith*, 53 Va. Cir. 102 (Henrico County 2000); *Wilson v. Smith*, 54 Va. Cir. 144 (Rockingham County 2000); *Cliff Simmons Roofing, Inc. v. Cash*, 49 Va. Cir. 156 (Rockingham County 1999). In fact, Plaintiff's counsel conceded at oral argument that agreements without time, geographical, or functional limitations are properly dismissed on demurrer.

Virginia courts will typically enforce covenants of up to two years and have also enforced agreements for a longer duration where the scope and geographic limits were narrowly drawn. *See, e.g., Roanoke Engineering Sales Co. v. Rosenbaum*, 223 Va. 548, 553, 290 S.E.2d 882 (1982) (finding a period of three years and a geographic limit defined by the "territory covered by [employer] to be reasonable). Therefore, all three factors must be considered together when determining if a non-compete clause is enforceable.

Covenants not to compete which restrict the former employee's performance of functions for his new employer are upheld by the Virginia Supreme Court only to the extent that the proscribed functions are the same functions as were performed for the former employer. *See Omniplex* at 250 (invalidating a prohibition on performing any service "for any other employer in a position supporting" the former employer's customer, regardless of whether or not such service would be in competition with the former employer); *Modern Env'ts, Inc. v. Stinnett*, 263 Va. 491, 495, 561 S.E.2d 694 (2002) (invalidating a restriction on employment in any capacity by a competing company); and *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37-38, 546 S.E.2d 424 (2001) (invalidating a covenant providing that any business that made any kind of motor was "similar" to a business that made specialized, brushless motors); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 553, 290 S.E.2d 882 (1982) (finding non-competition covenant reasonable because employment restriction was limited to activities similar to business conducted by former employer); *see also Landmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 528 (E.D. Va. 2006) (quoting *Cantol, Inc. v. McDaniel*, No. 2:06cv86, 2006 U.S. Dist. LEXIS 24648, 2006 WL 1213992 at *4 (E.D. Va. April 28, 2006)) (finding that the non-competition clause was excessive to the extent that it prohibited "a former employee from any form of employment with a competitor, including work *unrelated* to the employee's work [for their former employer]" (emphasis in original)).

Similarly, the Supreme Court of Virginia has stated that restrictive covenants must be reasonably limited in geographic scope. *Simmons v. Miller*, 261 Va. at 581-82 (holding the non-compete overbroad where its geographical scope potentially included the entire world even though the company did business internationally); *see also Contol, Inc. v. McDaniel*, 2006 U.S. Dist. LEXIS 24648, at *12 (E.D. Va. April 28, 2006) (noting that "the Supreme Court of Virginia has never upheld a restrictive covenant ancillary to an employment contract when the restrictive covenant could be applied to a geographic area in which the employee performed no function for the employer"). The Court has most often held that non-compete agreements are enforceable when limited to the area formally serviced by the former employee or within a set mile radius of the area formerly serviced by the former employee. *See, e.g., New River Media Group, Inc. v. Knighton*, 245 Va. 367, 368, 429 S.E.2d 25 (1993) (upholding a sixty mile restriction as to a radio host when that restriction was generally equivalent to a radio's broadcasting area); *Blue Ridge Anesthesia*, 239 Va. at 372-74 (enforcing a restriction limited to the territories formerly serviced by the employee); *Paramount Termite Control Co. v. Rector*, 238 Va. 171, 175-76, 380 S.E.2d 922 (1989) (enforcing a restriction limited to counties and cities in which the former employee had been assigned over the most recent two years of employment).

Here, there is no doubt that 1800SKILLED has a legitimate business interest in keeping its customer lists and relationships intact. However, the non-compete agreement is unlimited in both its geographic and functional scope. As a consequence, it is overly broad and will not be enforced by the Court.

The covenant not to compete in this case states that the employee will not work "within the State of Virginia, or any other state where TradeStaff provides labor." In the complaint, Nogiec is alleged to have been responsible for clients within the Hampton Roads area. Upon this allegation alone the non-compete provision is overly broad because it is not limited to the area formerly serviced by Nogiec or within a set mile radius of that territory. To conform to this provision, upon leaving TradeStaff's employment, Nogiec could not work anywhere 1800SKILLED does business within two years after Nogiec leaves. This means that, Nogiec could accept a job outside of Virginia or North Carolina (another state alleged in which 1800SKILLED does business), but if 1800SKILLED were to expand into the new area, say, Washington, D.C., then Nogiec would now be in violation of the non-competition agreement. As the Circuit Court in *Lawrence* noted about a similar provision " [the non-compete] is akin to an amoeba. By having a life wholly unto itself, this covenant may grow more oppressive without restriction day by day, week by week, month by month, or year by year." *Lawrence*, 53 Va. Cir. at 103.

Similarly, the non-compete provision proscribes the former employee from "directly or indirectly engag[ing] in the business of providing labor personnel . . . or in any business competitive with TradeStaff." (Am. Compl. Ex. 1.) The provision defines "[d]irectly or indirectly engaging in the business of 'labor provider' or in any competitive business" as "engaging in such business as an owner, partner, or agent, or as an employee of any person, firm, or corporation engaged in such business or in being interested directly or indirectly in any such business conducted by any person, firm, or corporation." *Id.* This is precisely the type of provision that was held unenforceable in *Motion Control Systems* and *Omniplex*. Essentially, this provision prohibits the former employee from working for any business competitive with 1800SKILLED/TradeStaff in any capacity whatsoever. The provision is so broad that, as defendants point out in their brief, the former employee could not even purchase stocks from a publicly traded company if that company could be termed a competitor or in a competitive business with TradeStaff/1800SKILLED. As with the geographic provision, this clause may also morph and grow to encompass industries wholly different and apart from those engaged in by the former employee or even in existence at the time the employee worked for 1800SKILLED. As a consequence, the provision is overly broad and unenforceable.

## C. *Tortious Interference with Contractual Relations*

To properly state a claim for tortious interference with a contractual relationship, plaintiff must allege: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship; and (4) damage to the party whose relationship has been interrupted. *Perk v. Vector Res. Group, Ltd.*, 253 Va. 310, 315, 485 S.E.2d 140, 143 (1997) (citing *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987)). Unlike a party to a contract for a definite term, however, an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain. Thus, the cause of action for interference with contractual rights provides no protection from the mere intentional interference with a contract terminable at will. *Duggin*, 360 S.E.2d at 315 (quoting *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985)).

Plaintiff alleges that 1800SKILLED had a "valid contractual relationship with Nogiec with continuing contractual obligations." Plaintiff in its Amended Complaint alleges that contractual relationship to mean the restrictive covenant which, if enforceable, would bar Nogiec from working for the defendants Chipton Ross and C. A. Jones. (Am. Compl. ¶ 23.) As previously held, the restrictive covenant is unenforceable and so the tortious interference cannot be based on that clause. Plaintiff instead alleges that the tortious interference occurred with relation to contracts with Plaintiff's customers. To properly allege a claim for tortious interference one must allege a breach or termination of contractual relationships. *Perk*, 253 Va. at 314. Subject to the demurrer standard of review, Plaintiff has not alleged facts sufficient enough to support a cause of action. For example, Plaintiff does not allege that any of its customers have breached their contracts with plaintiff due to the actions of defendants, nor have they asserted a decrease in revenue. Therefore, this claim cannot stand.

D. *Statutory Conspiracy Pursuant to Va. Code §§ 18.2-499 and 18.2–500*

Virginia Code §§ 18.2-499 and 18.2-500 allow a plaintiff to recover if, "any two or more persons . . . combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever." To prove such a claim, the plaintiff must provide evidence that the conspirators acted with legal malice, i.e. that the defendant acted intentionally, purposefully and without lawful justification. *Simmons*, 261 Va. at 578. With respect to pleading the requisite elements to maintain a claim of statutory conspiracy, the Supreme Court of Virginia notes that "Code § 18.2-499 do[es] not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business." *Id*. However, both statutory and common law conspiracy claims must be pleaded with particularity and not mere conclusory language. *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797 (1985).

In addition, if the relationship between the alleged conspirators is that of principal-agent or employer-employee, then the defendants are not separate entities. An entity cannot conspire with itself. *Charles E. Brauer Co. v. NationsBank*, 251 Va. 28, 37, 466 S.E.2d 382, 387 (1996); *Perk*, 485 S.E.2d at 143.

Here, plaintiff has not pleaded facts sufficient to maintain a statutory conspiracy claim. To the extent plaintiff is pleading that Nogiec and Chipton Ross and Nogiec and C. A. Jones are alleged to have conspired after Nogiec

was employed by each entity, the intra-corporate immunity doctrine applies and a conspiracy claim cannot be maintained.

E. *Common Law Conspiracy*

A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means. The foundation of a civil action of conspiracy is the damage caused by the acts committed in furtherance of the conspiracy. *Commercial Business Systems, Inc. v. BellSouth Services, Inc.*, 249 Va. 39 (1995). As with statutory conspiracy, common law conspiracy claims must be pleaded with particularity and with more than mere conclusory language. *Bowman*, 229 Va. at 541. And, as with statutory conspiracy claims, if the relationship between the alleged conspirators is that of principal-agent or employer-employee, the defendants are not separate entities. Pursuant to the intra-corporate immunity doctrine, an entity cannot conspire with itself. *Charles E. Brauer Co.*, 251 Va. at 36; *Perk*, 253 Va. at 314.

Insofar as the complaint alleges that defendants have conspired to violate the non-compete agreement, this claim is invalid. Parties cannot conspire to violate an unenforceable contract because to do so would not be a criminal or unlawful purpose. As noted above, to the extent this count alleges actions between Nogiec and his respective employers, such a claim is barred by the intra-corporate immunity doctrine. Furthermore, plaintiff has not pleaded any remaining conspiracy with sufficient particularity. Therefore, the demurrer is also sustained as to this count.

## Conclusion

The restrictive covenant is both geographically and functionally overbroad on its face. Therefore, the non-compete provision of this contract is unenforceable. Accordingly, the Court orders that the demurrer be sustained as to Count I with prejudice. For the reasons stated above, the demurrer is sustained as to Counts II, III, IV, and V; however counsel is granted leave to amend within thirty days.