# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## HILL v SEARS, ROEBUCK AND CO

Docket Nos. 143329, 143348, and 143633. Argued May 9, 2012. Decided August 16, 2012.

Marcy Hill, Patricia Hill, and Christopher Hill brought an action in the Macomb Circuit Court against Sears, Roebuck & Co., Sears Logistic Services, Inc., Merchant Delivery, Inc., Exel Direct, Inc., Mark Pritchard, Timothy Dameron, and others, seeking to recover damages for injuries and property damage incurred when Marcy Hill released natural gas through an uncapped gas line and plaintiffs' home burned down following Patricia Hill's attempt to light a candle and the resultant natural gas explosion. Defendants were prior owners of the home and the parties who sold, delivered, and installed an electric washer and dryer purchased by Marcy Hill in 2003. Hill's mother had directed the installers to place the washer and dryer in the same location where the prior owners' gas dryer had been situated. The prior owners had turned off the gas to the line supplying their dryer, but had not capped off the line when they moved, taking their dryer with them. In 2007, four years after the electric dryer's installation, during which time it had functioned without incident, Hill inadvertently opened the valve on the gas line. Marcy and Patricia Hill smelled gas throughout the day but did not act on this information, despite both women's knowledge that the smell of natural gas required safety precautions. Plaintiffs' home exploded that night when Patricia Hill attempted to light the candle with a lighter. Plaintiffs asserted that the installers had negligently installed the dryer and failed to discover, properly inspect, cap, and warn plaintiffs about the uncapped gas line. The court, Mark S. Switalski, J., denied the retailers', delivery companies', and installers' motions for summary disposition. The installers, Mark Pritchard and Timothy Dameron, appealed by leave granted. The Court of Appeals, MURPHY, C.J., and STEPHENS and M. J. KELLY, JJ., affirmed in an unpublished opinion per curiam, issued May 24, 2011 (Docket No. 295071). The retailers, delivery companies, and the installers filed separate applications for leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the applications or take other peremptory action. 490 Mich 896 (2011).

In an opinion by Justice MARY BETH KELLY, joined by Chief Justice YOUNG and Justices MARKMAN and ZAHRA, the Supreme Court *held*:

The installers owed no legal duty to plaintiffs with respect to the uncapped gas line. The installers and plaintiffs had a limited relationship that did not require the installers to undertake any action relative to the uncapped gas line, and the delivery and installation of the dryer did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous.

1. To establish a prima facie case of negligence, a plaintiff must prove (1) that the defendant owed the plaintiff a legal duty, (2) that the defendant breached the duty, (3) that the plaintiff suffered damages, and (4) that the defendant's breach was a proximate cause of the damages. There can be no tort liability unless the defendant owed the plaintiff a duty. As a general rule, there is no duty that obligates one person to aid or protect another. Duties may arise from a statute, a contractual relationship, or by operation of the common law. At common law, whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part to act for the benefit of the subsequently injured person. It must be determined whether the social benefits of imposing a duty outweigh the social costs of imposing the duty. There must have been a relationship between the parties before a duty can be imposed, and the harm must have been foreseeable.

2. The installers contracted to deliver and install the electric washer and dryer. Their only common-law duty was to use due care when delivering and installing the electric washer and dryer, which the installers accomplished at the direction of Marcy Hill's mother in a total of 12 minutes. Because of this limited relationship, the installers were not required to undertake any action with regard to the gas line, and plaintiffs' negligence action failed as a matter of law.

3. Certain special relationships give rise to a duty when a person entrusts himself or herself to the control or protection of another, such as the relationship between common carriers and their passengers, innkeepers and their guests, and doctors and patients. The duty to protect is imposed on the person in control because that person is best able to provide a place of safety. There was no special relationship between the parties here because the installers' actions related only to the delivery and installation of the washer and dryer. Plaintiffs did not entrust themselves to the control or protection of the installers or lose the ability to protect themselves. The installers did not owe plaintiffs a duty to warn because of plaintiffs' ignorance of and mistaken assumptions regarding the nature of the gas line. Plaintiffs had constructive notice of the gas line's existence because it was visible for a few weeks before the dryer was installed in front of it and knowledge of facts putting a person of ordinary prudence on inquiry is equivalent to actual knowledge of the facts that a reasonably diligent inquiry would have disclosed. The social benefits of imposing a duty under these circumstances would not outweigh the social costs because the result would absolve homeowners from any duty to protect themselves from hazards within their homes.

4. A duty separate and distinct from any contractual duty arises when an action creates a new hazard. The delivery and installation of the washer and dryer did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous. The hazard associated with the uncapped gas line was present when the installers entered the premises and when they left; the danger posed by the uncapped gas line was the same before and after the installation.

5. Any liability of the retailers or the delivery companies would have resulted from their agency relationship with the installers. The circuit court erred by denying the summary disposition motions.

Reversed and remanded for entry of an order granting defendants summary disposition.

Justice MARILYN KELLY, joined by Justices CAVANAGH and HATHAWAY, would have affirmed the Court of Appeals' judgment on the grounds that the installers owed plaintiffs a duty to warn of the potential hazards the gas pipe posed before their installation of the dryer concealed it. The installers had a duty to take reasonable safeguards to protect plaintiffs from harm and a duty to conform their conduct to that of a reasonable person when installing the washer and dryer. Justice KELLY would also have concluded that a duty to warn arose because of the relationship between the parties and because the installers had superior knowledge of the dangerous characteristics of an uncapped gas line. By contrast, plaintiffs did not know that the uncapped pipe was a gas line. Justice KELLY would have imposed a simple duty on defendant installers to warn of the dangers, limited to the area they occupied during the installation process and would not extend the duty to potential hazards unrelated to the electric dryer or its installation. The duty to use due care existed regardless of whether the installers' alleged negligence created a new hazard or increased the danger of an existing one, but the installers also owed plaintiffs a duty to not worsen an existing hazard. The installers increased the existing danger by installing the dryer in such a way as to conceal the uncapped gas line.

©2012 State of Michigan

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED AUGUST 16, 2012

STATE OF MICHIGAN

SUPREME COURT

MARCY HILL, PATRICIA HILL, and
CHRISTOPHER HILL,

       Plaintiffs-Appellees,

v                                        No. 143329

SEARS, ROEBUCK AND CO., SEARS
LOGISTIC SERVICES, INC., EXEL
DIRECT, INC. and MERCHANT
DELIVERY, INC.,

       Defendants-Appellees,

and

MARK PRITCHARD and TIMOTHY
DAMERON,

       Defendants-Appellants,

and

CHARLES R. LINDSEY, ORALIA J.
LINDSEY, and ALBERT KIMPE,

       Defendants.

MARCY HILL, PATRICIA HILL, and
CHRISTOPHER HILL,

      Plaintiffs-Appellees,

v                                No. 143348

SEARS, ROEBUCK AND CO., SEARS
LOGISTIC SERVICES, INC., MARK
PRITCHARD, and TIMOTHY DAMERON,

      Defendants-Appellees,

EXEL DIRECT, INC, and MERCHANT
DELIVERY, INC.,

      Defendants-Appellants,

and

CHARLES R. LINDSEY, ORALIA J.
LINDSEY, and ALBERT KIMPE,

      Defendants.

---

MARCY HILL, PATRICIA HILL, and
CHRISTOPHER HILL,

      Plaintiffs-Appellees,

v                                No. 143633

SEARS, ROEBUCK AND CO. and SEARS
LOGISTIC SERVICES, INC.,

      Defendants-Appellants,

EXEL DIRECT, INC, MERCHANT
DELIVERY, INC., MARK PRITCHARD,
and TIMOTHY DAMERON,

---

Defendants-Appellees,

and

CHARLES R. LINDSEY, ORALIA J.
LINDSEY, and ALBERT KIMPE,

Defendants.

_____

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

These cases arise out of an explosion that destroyed plaintiff Marcy Hill's Clinton Township home after she released natural gas through an uncapped gas line, which ignited when her adult daughter attempted to light a candle, after they had both actually smelled the gas in the home throughout the day and evening. Plaintiffs[1] filed suit against the retailers, delivery companies, and installers of plaintiffs' electric dryer, which had been installed nearly four years earlier and had functioned without incident. We heard oral argument on the applications to consider in part "(1) whether the defendant installers of the electrical appliance, Mark Pritchard and Timothy Dameron, had a duty to the plaintiffs with respect to the uncapped gas line in their home that was separate and distinct from their contractual duty to properly and safely install the electrical appliance" and "(2) whether these defendant installers created a new dangerous condition with respect to the uncapped gas line, or made an existing dangerous condition more hazardous . . . ."[2]

---

[1] "Plaintiffs" refers to Marcy Hill and her children, Patricia and Christopher Hill.

[2] *Hill v Sears Roebuck & Co*, 490 Mich 896 (2011). Any liability of the retailers and delivery companies would result from their agency relationship with the installers.

3

Because defendant installers and plaintiffs had a limited relationship that did not require defendant installers to undertake any action relative to the uncapped gas line, we hold that defendant installers owed no legal duty to plaintiffs with respect to the uncapped gas line in plaintiffs' home. Further, we conclude that the delivery and installation of the dryer did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous. We therefore reverse the judgment of the Court of Appeals and remand this case to the circuit court for entry of an order granting summary disposition for defendants.[3]

## I. FACTS AND PROCEDURAL HISTORY

In August 2003, Marcy purchased a home from Charles and Oralia Lindsey. The home had a kitchen niche for the clothes washer and dryer. The Lindseys had used a natural-gas-powered dryer, which connected to a gas line that extended from the furnace room to the kitchen niche.[4] When the Lindseys moved out of the home, they took their appliances with them and turned off the gas to the line supplying the dryer. They did not put a pipe cap on the end of the gas line in the kitchen, the end of which was visibly apparent.

---

[3] As used in this opinion "defendants" refers to the retailers, the delivery companies, and the installers. Plaintiffs' claims against defendant retailers and delivery companies are based on the theory that defendant installers were the agents of both the retailers and the delivery companies. Plaintiffs also sued the former owner of the home who installed the gas line and two other previous owners, but none of these individuals are involved in this appeal.

[4] A prior owner, Albert Kimpe, had installed the gas line.

4

A few weeks later, Marcy purchased a new washer and an electric-powered dryer from defendant retailers.[5] The appliances were delivered by defendant delivery companies[6] and installed by Pritchard and Dameron on September 8, 2003.[7] At the direction of Marcy's mother, defendant installers positioned the appliances in the designated area of the kitchen, in the same spot where the Lindseys' washer and dryer had been. After its installation, the electric dryer functioned without incident for almost four years.

On May 19, 2007, Marcy's kitchen faucet and the pipes under her sink required repair. The next day, after seeking repair advice, Marcy attempted to turn off the main water supply by turning various valves in the furnace room. In doing so, Marcy inadvertently opened the natural gas valve supplying the uncapped gas line in the kitchen. After smelling natural gas, Marcy attempted to shut off the valve by returning it to what she thought to be its original position, but she did not close the valve. Marcy continued to smell gas periodically throughout the day. Although she knew she "was supposed to call someone" under the circumstances, she did not do so.[8] Instead, Marcy opened the

---

[5] Sears, Roebuck and Co. and Sears Logistic Services, Inc., which contracted for the delivery.

[6] Exel Direct, Inc., and Merchant Delivery, Inc.

[7] Defendant Sears Logistic Services, Inc., contracted with defendant delivery companies to perform delivery services, who in turn subcontracted the delivery and installation services to defendant installers. Plaintiffs are not a party to any of these contracts.

[8] Marcy admitted at her deposition that she had received gas bills that included instructions to immediately call the gas company if the smell of gas was detected.

windows and "thought there was nothing wrong," continuing to light and smoke cigarettes throughout the evening.

Later, when Marcy's daughter, Patricia, arrived, she told Marcy that she smelled gas. Like Marcy, Patricia knew the smell of gas "was dangerous" and that she should "get out of the house."[9] While Marcy and her daughter continued to periodically smell gas, they both continued to light and smoke cigarettes indoors and did nothing to remedy the situation except to open the windows.[10] That evening, both Marcy and her son went to bed, while Patricia went out. When Patricia returned home at about 3 a.m., she again smelled gas near the dryer.[11] Patricia then went to the living room, where she attempted to light a candle with a lighter. According to Patricia, "as soon as the lighter ignited," the house exploded. Plaintiffs escaped from the burning house, but all of them suffered some injuries.

Plaintiffs filed a lawsuit against the instant defendants, alleging that defendant installers negligently installed the new electric dryer and failed to properly inspect the uncapped gas line, discover the uncapped gas line, cap the gas line, and warn or give notice to plaintiffs of the uncapped gas line. Defendant installers moved for summary

---

[9] At her deposition, Patricia indicated she had "graduate[d] from the D.A.R.E. program [in which] we all learned in fifth grade [that] if you smell gas [you're to get out of the house immediately]."

[10] Apparently, the smell of natural gas was sufficiently strong that plaintiffs' neighbors told investigators and news reporters that they had smelled the gas before the explosion.

[11] Patricia testified at her deposition that she did not smell gas upon returning home at 3 a.m., but an insurance investigation report indicates that Patricia told the investigator that she did.

6

disposition under MCR 2.116(C)(8) and (10), while defendant retailers and delivery companies moved for summary disposition under MCR 2.116(C)(10). Defendant installers asserted that they did not owe plaintiffs a cognizable duty because they did not create a "new hazard" that did not previously exist and they had "absolutely no interaction" with the gas line. Defendant retailers and delivery companies argued that they had no duty to protect plaintiffs from the gas line, noting that they had merely sold Marcy the dryer or arranged for delivery services.

The circuit court first denied defendant retailers' and delivery companies' motions for summary disposition, reasoning in part that, "at a minimum, [these] defendant entities owed a duty to plaintiffs not to make the situation involving the uncapped gas line worse." The circuit court also denied defendant installers' motion for summary disposition, explaining:

> [T]here is a social policy which applies to delivery personnel such that they are precluded from entering an individual's home and making a dangerous situation even worse. Plaintiffs have presented sufficient evidence that the uncapped gas valve, coupled with its concealment by the location of a new appliance, created a foreseeable risk of harm. There is no evidence that [defendant installers] attempted to cap the open gas valve or warn plaintiffs about the hazard. It cannot seriously be disputed that the nature of the harm posed a very serious risk. The Court therefore concludes that [defendant installers] owed a duty to plaintiffs not to make the hazard created by the uncapped gas valve worse by their actions, including, but not limited to, positioning the new appliances in such a way as to conceal the hazard from view.[12]

---

[12] Citations omitted. After the circuit court denied defendant installers' motion for summary disposition, defendant delivery companies brought a motion for clarification of the duty owed to plaintiffs. In a written opinion and order, the circuit court stated, "[T]he only duty that [defendant delivery companies] owed to plaintiffs was to refrain from

7

Defendant installers sought interlocutory leave to appeal in the Court of Appeals, which granted leave and affirmed the circuit court in an unpublished opinion per curiam.[13]  Addressing the issue of duty, the Court of Appeals held that defendant installers had a duty not to make the uncapped gas line more dangerous by "concealing" it with the electric dryer.  The panel explained, "[T]he hazard that allegedly caused the explosion did not exist until [defendant installers] installed the dryer in a way that prevented the discovery of the uncapped gas line."[14]

Defendants filed separate applications for leave to appeal in this Court.  We heard oral argument on the applications.  In lieu of granting leave to appeal, pursuant to MCR 7.302(H)(1), we reverse the judgment of the Court of Appeals.

## II.  STANDARD OF REVIEW

We review de novo a circuit court's determination on a motion for summary disposition under MCR 2.116(C)(10).[15]  Whether a defendant owes a plaintiff a duty of

---

making the situation involving the uncapped gas valve any worse than it already may have been."

[13] *Hills v Sears Roebuck & Co*, unpublished opinion per curiam of the Court of Appeals, issued May 24, 2011 (Docket No. 295071).

[14] *Id.* at 3 (emphasis added).

[15] *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003).  Because the circuit court considered evidence outside the pleadings when it denied defendant installers' motion for summary disposition, we consider the circuit court's determination to be based on MCR 2.116(C)(10), as opposed to (C)(8).

8

care is a question of law decided by the circuit court.[16]  We review de novo the determination whether a duty exists.[17]

### III. ANALYSIS

To establish a prima facie case of negligence, a plaintiff must prove that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages."[18]  This negligence action, however, principally concerns the element of duty and requires us to consider the threshold question whether defendants owed plaintiffs any of the claimed legal duties when the dryer was sold, delivered, and installed in plaintiffs' home nearly four years before the explosion.[19]  Defendants argue that the lower courts erred by concluding that they owed plaintiffs a duty to not create a new hazard by "concealing" an open view of the gas line.  Plaintiffs counter that defendant installers owed a duty to either cap the gas line or warn plaintiffs of the existence of the uncapped line.

---

[16] *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001).

[17] *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004).

[18] *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

[19] See *Fultz*, 470 Mich at 463 (noting that the threshold question in a negligence action is whether the defendant owed a duty to the plaintiff).

## A. LEGAL DUTY

"'It is axiomatic that there can be no tort liability unless [a] defendant[] owed a duty to [a] plaintiff.'"[20]  Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others.[21] However, as a general rule, "'there is no duty that obligates one person to aid or protect another.'"[22]  Generally, the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law, as plaintiffs allege in this case.[23]

At common law, "[t]he determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part *to act* for the benefit of the subsequently injured person."[24] "[T]he ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty."[25]

---

[20] *Id.*, quoting *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997).

[21] *Loweke*, 489 Mich at 165, citing *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967).

[22] *Loweke*, 489 Mich at 164, quoting *Williams v Cunningham Drug Stores*, 429 Mich 495, 499; 418 NW2d 381 (1988).

[23] *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992).

[24] *In re Certified Question from the Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 505-506; 740 NW2d 206 (2007) (quotation marks and citations omitted; emphasis added); see also *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007).

[25] *In re Certified Question*, 479 Mich at 505 (citations omitted).

Factors relevant to the determination whether a legal duty exists include the "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented."[26] We have recognized, however, that "[t]he most important factor to be considered [in this analysis] is the relationship of the parties" and also that there can be no duty imposed when the harm is not foreseeable.[27] In other words, "[b]efore a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable."[28] If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors.[29]

Plaintiffs argue that defendant installers had a common-law duty to cap the gas line or warn plaintiffs of its existence.[30] As noted, in determining whether a legal duty should be imposed in this case, we first consider the parties' relationship. In *Dyer v Trachtman*,[31] a medical malpractice case, we focused on the relationship between the parties to determine whether the defendant doctor, who performed an independent medical examination (IME) of the plaintiff, owed a duty to the plaintiff.[32] We recognized

---

[26] *Id*. (quotation marks and citations omitted).

[27] *Id*. at 505, 508.

[28] *Id*. at 509.

[29] *Id*. at 508-509.

[30] Because plaintiffs raise an agency theory of liability against defendant retailers and defendant delivery companies based on those defendants' relationship with defendant installers, our analysis focuses solely on whether defendant installers owe plaintiffs any duty related to the gas line.

[31] *Dyer v Trachtman*, 470 Mich 45; 679 NW2d 311 (2004).

[32] *Id*. at 47-50.

11

in *Dyer* that because the parties only had a limited relationship, unlike that between a patient and treating physician, the defendant only owed a limited duty to the plaintiff commensurate with his performance of the IME.[33]  Because only a limited relationship existed, only a limited duty could be imposed, and consequently, it was unnecessary to consider the other factors relevant to determining whether a duty existed.[34]

As in *Dyer* the parties in this case had a limited relationship, which was simply that of a customer and an installer of electrical appliances.  And although a contractual relationship existed to meet this end, plaintiffs concede that defendant installers satisfied their contractual obligations by delivering and installing the washer and electric dryer. Instead, plaintiffs assert that defendant installers had a common-law duty to take certain actions with respect to the uncapped gas line.[35]  The limited duty defendant installers undertook, however, was only to properly deliver and install the washer and electric dryer in plaintiffs' home.  Certainly every person engaged in the performance of an undertaking has "'an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others.'"[36]  Here, the limited undertaking in which the

---

[33] *Id*. at 49-50.

[34] *Id*.; see also *In re Certified Question*, 479 Mich at 507 (explaining that it is unnecessary to consider the additional factors when only a limited relationship exists).

[35] As we recently explained in *Loweke*, 489 Mich at 171:

> [I]n determining whether the action arises in tort, and thus whether a separate and distinct duty independent of the contract exists, the operative question . . . is whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort, including those duties that are imposed by law.

[36] *Id.* at 165, quoting *Clark*, 379 Mich at 261.

defendant installers were engaged was the delivery and installation of a washer and an electric dryer. The contract did not obligate them to inspect, cap, or in any manner touch the gas line. Having engaged to perform this undertaking, defendant installers had a common-law duty to do so with due care, and the record reflects that they did so.

Defendant installers entered plaintiffs' home for this limited purpose only once, for a total of 12 minutes. Further, the task was accomplished in a nonnegligent manner at the direction of Marcy's mother, as demonstrated by the fact that the electric dryer functioned without incident up until the time of the explosion. No record evidence suggests that defendant installers asserted any duty relative to the gas line, let alone any duty to inspect or warn plaintiffs about the gas line. Given the limited nature of the relationship between defendant installers and plaintiffs, defendant installers were under no obligation to warn of or cap the gas line or undertake *any* action relative to the gas line, but only had an obligation to use due care when installing the appliances.[37] Because

---

[37] Plaintiffs cite *Girvan v Fuelgas Co*, 238 Mich App 703; 607 NW2d 116 (2000), to argue that the parties' relationship requires the imposition of a duty, but *Girvan* does not support their position. Rather, in an opinion authored by then Judge ZAHRA, the Court of Appeals recognized that a gas supplier

> has a duty to ensure that its product is delivered safely to the exterior of the premises of the end user but, in the absence of an agreement to do otherwise, that duty does not extend to the inspection of the interior lines, conduits, and appliances over which the supplier has no control. [*Girvan*, 238 Mich App at 714.]

The *Girvan* Court relied on caselaw from this Court that recognized that a duty could be imposed on suppliers of dangerous commodities only if the supplier was negligent in performing the function it agreed to perform. See *Gadde* v *Mich Consol Gas Co*, 377 Mich 117, 126; 139 NW2d 722 (1966); *Kevreson v Mich Consol Gas Co*, 374 Mich 465; 132 NW2d 622 (1965); *Young v Lee*, 310 Mich 42; 16 NW2d 659 (1944). Because the gas supplier in *Girvan* did not expressly agree to an inspection of the interior gas lines,

13

the limited relationship of the parties did not require defendant installers to undertake any action with regard to the gas line, plaintiffs' negligence claim fails as a matter of law.

Plaintiffs, however, argue that defendant installers had a duty to take action with regard to the gas line. Plaintiffs' argument is flawed because it wrongly assumes that defendant installers, having undertaken to deliver and install the washer and electric dryer, assumed other responsibilities not associated with the delivery and installation of the washer and dryer.[38] Defendant installers did not act on the gas line. They only

---

the Court of Appeals concluded that the defendant had no duty in that regard. And like the defendant in *Girvan*, defendant installers here did not expressly agree to enter plaintiffs' premises for the purpose of inspecting the gas line. The dissent, however, suggests that *Girvan* supports imposition of a duty because *Girvan* recognized that a "reasonable person should seek expert assistance when dealing with dangerous commodities on the person's premises" and, according to the dissent, plaintiffs did seek expert assistance from defendant installers to install their electric dryer. *Post* at 9 n 14. Yet *Girvan* is irrelevant in this regard because while plaintiffs did seek expert assistance to install an electric dryer, plaintiffs never sought expert assistance with respect to the smell of natural gas and, at the time of installation, defendant installers were not dealing with a dangerous commodity. Thus, we do not "fail[] to recognize" that plaintiffs sought expert assistance to install their appliances. *Post* at 9 n 14. The dissent has simply mischaracterized the record and our opinion.

[38] The dissent makes the same flawed assumption when it asserts that defendant installers had a duty to warn plaintiffs of the gas line because of their "superior knowledge" of "gas lines, appliances, and their installation." *Post* at 5. In reaching this conclusion, the dissent disregards the limited relationship of the parties, which, as we have explained, in no way imposed a duty on defendant installers to "take reasonable safeguards to protect plaintiffs from harm." *Post* at 4. Further, even assuming that defendant installers possessed some superior knowledge, they were under no obligation to warn plaintiffs about the gas line because it was highly visible and defendant installers would have no reason to believe that plaintiffs, the homeowners, would not have realized its dangerous condition. The products-liability case the dissent relies on in support, *post* at 5, is inapposite for this reason, as well as the fact that defendant installers were the manufacturer of neither the gas line nor the dryer.

delivered and installed the dryer. Thus, having not undertaken by contract or otherwise to act on the gas line, they had no duty to plaintiffs with respect to it.[39]

Plaintiffs also suggest that we should conclude that defendant installers owed plaintiffs a duty because of plaintiffs' ignorance of and mistaken assumptions regarding the gas line.[40] We decline to impose a duty on the basis of ignorance or mistaken assumption under these facts because the indicia necessary for imposing a duty based on a special relationship are plainly absent. We have recognized that certain types of special relationships, such as common carriers and their passengers, innkeepers and their guests, and doctors and patients, justify the imposition of a duty because a person entrusts

---

[39] Plaintiffs are essentially asking this Court to hold that defendant installers had a duty to warn or otherwise protect them from an observable hazard that was created by a third party (a prior homeowner). But such a holding, which the dissent also advocates, is directly contrary to the common law, which does not "obligate[] one person to aid or protect another" except "where a special relationship exists between a plaintiff and a defendant." *Williams*, 429 Mich at 499. We have recognized several special relationships, such as common carriers and their passengers, innkeepers and their guests, and doctors and their patients, but this Court has never held that a special relationship exists between an appliance installer and homeowners or home occupiers. Indeed, the dissent's reliance on *Huhtala v Travelers Ins Co*, 401 Mich 118, 130; 257 NW2d 640 (1977), *post* at 4 n 5 and 6 n 9, for the proposition that defendant installers had a duty to warn plaintiffs about the gas line is unavailing because *Huhtala*'s discussion of a duty to protect refers to cases in which that duty arose as a result of special relationships. In this case, there being no common-law duty to act, defendant installers had no obligation to act for the benefit of the homeowner or occupiers in regard to hazards created by third parties.

[40] During her deposition, Marcy testified that she "didn't know," in terms of gas and electric, what lines were in the kitchen and that she "kind of assumed Sears did all that." She stated: "I didn't know that stuff, details. I thought Sears did that stuff when they came out."

15

himself or herself to the control of another person. We have explained the rationale behind imposing a duty in such situations:

> Social policy . . . has led the courts to recognize an exception to th[e] general rule [that there is no duty that obligates one person to aid or protect another] where a special relationship exists between a plaintiff and a defendant. . . . The rationale behind imposing a duty to protect in these special relationships is based on control. *In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety*.[41]

Defendant installers' actions here related solely to the delivery and installation of the washer and electric dryer, which occurred *in plaintiffs' home*, which is quintessentially the place where plaintiffs are most in control and "best able to provide a place of safety" for themselves.[42] It is not the result of defendant installers' actions, that plaintiffs ceded control of their home, thereby "entrust[ing] [themselves] to the control and protection of another . . . ."[43] Plaintiffs never lost control of the gas line. Plaintiffs easily could have at any time capped the line or removed it or, once they smelled gas, called the gas company to ensure their own safety, as well as that of the premises. Instead, plaintiffs simply chose not to undertake these obvious safety precautions, despite Marcy's concession that she knew to call the gas company if she detected the odor of natural gas. Given that the limited relationship between an appliance installer and homeowners or occupiers is such that the homeowners or occupiers neither entrust the

---

[41] *Williams*, 429 Mich at 499 (emphasis added).

[42] *Id*.

[43] *Id*.

16

appliance installer with their control and protection nor lose the ability to protect themselves, we decline to modify the common law and impose a duty on such an installer to act for the benefit of the homeowners or occupiers in regard to hazards created by third parties. Indeed, we are not aware of a single Michigan case that imposes a legally cognizable duty when a competent adult chooses to remain ignorant about a condition within his or her complete control; likewise, we are not aware of any caselaw holding that a party's silent, unspoken assumptions impose an affirmative legal duty on another party to act in accordance with those unshared assumptions.

Moreover, regarding the duty to warn, we note that the circumstances of the relationship between defendant installers and plaintiffs did not give rise to any legal obligation on defendant installers' part because plaintiffs knew about the uncapped gas line before installation of the dryer. It is uncontested that the uncapped gas line was fully visible for several weeks between the time Marcy bought the home in August 2003 and September 8, 2003, when the dryer was installed. At her deposition, Marcy acknowledged that she had lived in the house for "a few weeks" before the washer and dryer were installed, that the open kitchen niche was "highly visible" during this time, and that she saw the pipe in the kitchen niche but "thought [the pipes] were water lines." These undisputed facts establish that plaintiffs had constructive notice of the gas line's existence. This Court considered constructive notice in *Converse v Blumrich*, stating:

> A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. . . . If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those

17

facts, which, if he had used such ordinary diligence, he would readily have ascertained.[44]

Plainly, Marcy's admission that she was aware of the pipes in the kitchen niche should have led her, using "ordinary caution," to make further inquiries regarding the nature of the pipes. Instead of making further inquiries or using ordinary diligence, Marcy merely "kind of assumed Sears did all that." Therefore, plaintiffs are considered to have notice of the "highly visible" gas line because "[k]nowledge of facts putting a person of ordinary prudence on inquiry *is equivalent to actual knowledge* of the facts which a reasonably diligent inquiry would have disclosed."[45] Because "there is no duty to warn someone of a risk of which that person is aware,"[46] plaintiffs' theory that defendant installers had a duty to warn them of the gas line necessarily fails as a matter of law.[47]

---

[44] *Converse v Blumrich*, 14 Mich 109, 120 (1866) (citations omitted). Black's Law Dictionary (9th ed), p 1164, defines "constructive notice" as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of . . . ." Although neither Patricia nor Christopher testified that they actually saw the kitchen pipes, the fact that the pipes were highly visible in a high-traffic area of the home for nearly a month also supports imputing notice to Patricia and Christopher.

[45] *Deputy Comm'r of Agriculture v O & A Electric Co-Op, Inc*, 332 Mich 713, 716; 52 NW2d 565 (1952) (emphasis added). In reaching this conclusion, we have not somehow "confuse[d]," *post* at 10, plaintiffs' knowledge of the pipe with knowledge that the pipe was dangerous, but have simply applied the law as it pertains to constructive notice. Indeed, it is the dissent that "confuses," *post* at 10, these principles of constructive notice because it would require that plaintiffs had actual notice of the uncapped gas line's potentially dangerous condition before imputing that knowledge to plaintiffs.

[46] *Groncki v Detroit Edison Co*, 453 Mich 644, 656; 557 NW2d 289 (1996) (opinion by BRICKLEY, C.J.).

[47] Likewise, the Court of Appeals' reasoning that defendant installers breached a duty to not create a new hazard or make an existing hazard worse by "install[ing] the dryer in a

In summary, because only a limited relationship existed between the parties, through which defendant installers undertook only to nonnegligently install electric appliances, it is not necessary for us to consider the additional factors related to whether a duty exits.[48] Plaintiffs nonetheless urge us to alter the common law and consider policy reasons that support the imposition of a duty. However, it is precisely because the social benefits of imposing a duty do not outweigh the social costs that we will not do so.[49] If liability were imposed on defendants for failure to cap the gas line or to warn plaintiffs of the uncapped gas line, then similarly situated defendants would presumably also owe a duty to a plaintiff to inspect and prevent all other hazards that the defendant might encounter in a customer's home. The burden imposed on defendants would be onerous and unworkable because they would be required to protect their customers from potential hazards they might encounter in the customer's home when, in fact, it is the *homeowners* who are best equipped to be aware of their home's potential hazards and protect themselves accordingly.[50] Indeed, it is difficult to envision what social benefit would

---

way that prevented the discovery of the uncapped gas line," *Hill*, unpub op at 3, fails for the same reason. Plaintiffs already had notice of the gas line *well before* defendant installers arrived to install the appliances. It is simply illogical to conclude that defendant installers' actions *prevented* plaintiffs' discovery of the gas line when plaintiffs already had notice of it. Placing the dryer in front of the gas line does not somehow change the knowledge that plaintiffs had already acquired.

[48] *In re Certified Question*, 479 Mich at 506-507.

[49] *Id*. at 505.

[50] The dissent suggests that if a duty to warn were imposed, the scope of a defendant's duty would be limited and workable. However, the dissent essentially agrees that a defendant's potential duty would extend to all areas of a plaintiff's home that the defendant works in and traverses. And while the dissent attempts to limit an appliance

19

result were we to recognize plaintiffs' claim because the result would be to absolve homeowners from any duty to protect themselves from hazards *within their own homes*. As we have previously explained:

> [W]e have on occasion allowed for the development of the common law as circumstances and considerations of public policy have required. See, e.g., *Berger* [*v Weber*, 411 Mich 1; 303 NW2d 424 (1981)]. But as Justice YOUNG has recently observed, our common-law jurisprudence has been guided by a number of prudential principles. See Young, *A judicial traditionalist confronts the common law*, 8 Texas Rev L & Pol 299, 305-310 (2004). Among them has been our attempt to "avoid capricious departures from bedrock legal rules as such tectonic shifts might produce unforeseen and undesirable consequences," *id.* at 307, a principle that is quite applicable to the present case.[51]

Accordingly, we continue to adhere to our common-law concept of duty that is circumscribed by the bounds of the parties' relationship.

## B. NEW HAZARD

To avoid preclusion of their negligence claim, plaintiffs allege that defendant installers created a new hazard by placing the electric dryer in front of the gas line. As this Court stated in *Fultz*, one breaches a duty that is "separate and distinct" from the contract when it creates a "new hazard."[52] Thus, the remaining issue is whether defendant installers created a new hazard when they installed the washer and dryer in front of the gas line.

---

installer's duty to hazards related to the appliance or its installation, it has not explained how to discern which hazards are related and which are "unrelated." *Post* at 8.

[51] *Henry v Dow Chem Co*, 473 Mich 63, 83; 701 NW2d 684 (2005).

[52] *Fultz*, 470 Mich at 468-469 (emphasis omitted).

20

The delivery and installation in this instance did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition more hazardous. The hazard—the uncapped gas line—was present when defendant installers entered the premises, and it was present when they left. The placement of the dryer did not affect the existence or nature of the hazard in any manner because the danger posed by the uncapped gas line was *exactly the same* before and after the electric dryer was installed.[53] The delivery and installation in this instance did not create a new dangerous condition with respect to the uncapped gas line, or make an existing dangerous condition more hazardous. Therefore, the Court of Appeals erred by concluding that defendant installers breached a duty not to create a new hazard.

## IV. CONCLUSION

Defendant installers and plaintiffs had a limited relationship that required the former to properly install electrical appliances in plaintiffs' home. Because that limited relationship did not require defendant installers to undertake any action with respect to the uncapped gas line, they owed plaintiffs no duty with respect to the gas line as a matter of law. Further, the delivery and installation of the dryer did not create a new dangerous condition with respect to the uncapped gas line or make an existing dangerous condition

---

[53] The dissent's opposite conclusion lacks logic. That the uncapped gas line was concealed from view did not somehow worsen the already dangerous condition of the gas line. While the dissent suggests that a visible danger is less dangerous than an "invisible" one, *post* at 13, this theory fails under the circumstances of this case in which the character of the gas line remained the same before and after the dryer's installation and, as the dissent admits, plaintiffs already knew of the pipe's existence before the dryer's placement.

more hazardous. Thus, the lower courts erred by denying defendants' motions for summary disposition on the basis that defendants owed plaintiffs a duty. We therefore reverse the judgment of the Court of Appeals and remand this case to the circuit court for entry of an order granting summary disposition in favor of defendants.

Mary Beth Kelly
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra

22

S T A T E   O F   M I C H I G A N

SUPREME COURT

MARCY HILL, PATRICIA HILL, and
CHRISTOPHER HILL,

Plaintiffs-Appellees,

v                                                              No. 143329

SEARS, ROEBUCK AND CO., SEARS
LOGISTIC SERVICES, INC., EXEL
DIRECT, INC. and MERCHANT
DELIVERY, INC.,

Defendants-Appellees,

and

MARK PRITCHARD and TIMOTHY
DAMERON,

Defendants-Appellants,

and

CHARLES R. LINDSEY, ORALIA J.
LINDSEY, and ALBERT KIMPE,

Defendants.

_____

MARCY HILL, PATRICIA HILL, and
CHRISTOPHER HILL,

Plaintiffs-Appellees,

v                                                              No. 143348

SEARS, ROEBUCK AND CO., SEARS
LOGISTIC SERVICES, INC., MARK

PRITCHARD, and TIMOTHY DAMERON,

        Defendants-Appellees,

EXEL DIRECT, INC, and MERCHANT
DELIVERY, INC,

        Defendants-Appellants,

and

CHARLES R. LINDSEY, ORALIA J.
LINDSEY, and ALBERT KIMPE,

        Defendants.

---

MARCY HILL, PATRICIA HILL, and
CHRISTOPHER HILL,

        Plaintiffs-Appellees,

v                              No. 143633

SEARS, ROEBUCK AND CO. and SEARS
LOGISTIC SERVICES, INC.,
        Defendants-Appellants,

EXEL DIRECT, INC, MERCHANT
DELIVERY, INC, MARK PRITCHARD,
and TIMOTHY DAMERON,

        Defendants-Appellees,
and

CHARLES R. LINDSEY, ORALIA J.
LINDSEY, and ALBERT KIMPE,

        Defendants.

---

MARILYN KELLY, J. (*dissenting*).

This interlocutory appeal presents a narrow question. It is whether the two defendants who installed plaintiff Marcy Hill's electric washer and dryer owed plaintiffs a legal duty in tort with respect to plaintiffs' uncapped gas pipe. It is not about what duties were owed to plaintiffs by the former owners of the house. It is not about what duties were owed by the party who detached and removed the gas dryer. It is not about whether any of those parties or any defendant in this case ultimately should be held liable for the gas explosion that destroyed plaintiffs' home.

The majority concludes that the installers, defendants Mark Pritchard and Timothy Dameron, owed no duty in tort to plaintiffs related to the gas pipe. It further concludes that the installation of the dryer did not create a new hazard or make an existing dangerous condition more hazardous. It finds that all defendants are entitled to summary disposition of all of plaintiffs' claims. I disagree with these conclusions. As a consequence, I respectfully dissent.

DEFENDANTS OWED PLAINTIFFS A LEGAL DUTY TO WARN

It is axiomatic that there can be no liability in tort unless the defendant owes a duty to the plaintiff.[1] In assessing this issue, we examine whether an actor has a legal obligation "to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others."[2] "'In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in

---

[1] See *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

[2] *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967).

3

negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.'"[3]

We consider several criteria when evaluating whether a duty exists, including (1) the relationship of the parties, (2) the foreseeability of harm, (3) the burden on the defendant, and (4) the nature of the risk presented.[4] Applying these criteria, I would hold that when they concealed the uncapped gas pipe, the installers owed plaintiffs a duty to warn them of the potential hazards it posed.

The first criterion to consider when evaluating the existence of a legal duty is the relationship of the parties. There was a direct relationship between the installers and plaintiffs. The installers entered plaintiffs' home for the purposes of delivering and installing a washer and an electric dryer. In addition to their contractual duties, the installers had a duty to take reasonable safeguards to protect plaintiffs from harm.[5] While performing the installation, they also had a duty to conform their conduct to that of a reasonable person.

At the summary disposition hearing, plaintiffs presented evidence that the installers either were aware of, or should have been aware of, the uncapped gas pipe when they were installing plaintiffs' electric dryer. This is because they have a level of

---

[3] *Schultz v Consumers Power Co*, 443 Mich 445, 449-450; 506 NW2d 175 (1993), quoting Prosser & Keeton, Torts (5th ed), § 53, p 356.

[4] *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004).

[5] *Huhtala v Travelers Ins Co*, 401 Mich 118, 130; 257 NW2d 640 (1977) ("The relationship of the supplier of services with the consumer, although contractual in inception, [gives] rise to a duty imposed by law on the supplier, apart from the terms of their agreement, to take reasonable safeguards to protect the consumer.").

4

sophistication and knowledge superior to that of plaintiffs with respect to the dangers associated with gas lines, appliances, and their installation. This Court has recognized and imposed a duty on the manufacturer or seller of a product because that party has superior knowledge of the product's dangerous characteristics.[6] Here, the installers had superior knowledge of the dangerous characteristics of a pipe that they concealed from plaintiffs with their product. A duty to warn should arise in both circumstances.

The duty to warn in this case is analogous to the duty that this Court described in *Glittenberg v Doughboy Recreational Industries (On Rehearing)*.[7] In *Glittenberg*, the Court held that

> [a] duty is imposed on a manufacturer or seller to warn under negligence principles summarized in § 388 of 2 Restatement Torts, 2d, pp 300-301. Basically, the manufacturer or seller must (a) have actual or constructive knowledge of the claimed danger, (b) have no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fail to exercise reasonable care to *inform* [*users*] *of its dangerous condition or of the facts which make it likely to be dangerous*.[8]

The installers did not deny that they were aware or should have been aware of the uncapped pipe and its dangers. They have not shown that plaintiffs were aware of what it was or what dangers it presented. Plaintiffs' expert witness, David Stayer, testified:

> [I]nstallers are hired because they have a certain level of knowledge and expertise . . . more than the homeowner has.

---

[6] *Glittenberg v Doughboy Recreational Indus (On Rehearing)*, 441 Mich 379, 391; 491 NW2d 208 (1992).

[7] *Id*.

[8] *Id*. at 389-390 (emphasis added) (citation and quotation marks omitted).

5

* * *

> The majority of homeowners have very little . . . mechanical
> background to understand the ramifications of installing things in a certain
> procedure for safety's sake. They hire people to do this so that the device
> or the work that is done is done . . . in a proper workmanship-type way, and
> also so that it's mechanically safe and physically safe so that there's not
> going to be gas leaks, electrical arcs that could cause problems with the
> devices or fires in the future. That's what they hire these people for.

In sum, the installers knew or should have known about the gas pipe and had no reason to

believe that plaintiffs knew what it was. And they failed to inform plaintiffs of its danger

before concealing it with the dryer. Accordingly, the relationship of the parties weighs

heavily in favor of imposing a duty on the installers to warn plaintiffs of the danger

associated with the uncapped gas line.[9]

The second criterion relevant to determining whether this duty exists is the

foreseeability of the harm involved. In this regard, "[a] plaintiff need not establish that

the mechanism of injury was foreseeable or anticipated in specific detail. It is only

necessary that the evidence establishes that *some* injury to the plaintiff was foreseeable or

---

[9] The majority claims that the fact that "[defendants] did not expressly agree to enter
plaintiffs' premises for the purpose of inspecting the gas line" weighs against imposing a
duty. *Ante* at 14 n 37. This claim is misleading. The installers were not contractually
obligated to inspect the gas line, but they *were* contractually obligated to install the
electric dryer. They did so in a location directly in front of the uncapped gas pipe without
warning plaintiffs of the danger they had concealed. By undertaking to install the dryer,
the installers assumed a duty to act in a reasonably prudent manner.

The majority similarly errs in its claim that because the installers did not lay hands
on the gas pipe, they did not owe plaintiffs a legal duty with respect to it. See *ante* at 13-
14. *Huhtala* explicitly held that a duty to act in a reasonable manner and protect a
consumer arises "*apart from the terms of* [*a contract*]." *Huhtala*, 401 Mich at 130
(emphasis added).

6

to be anticipated."[10]   Here, plaintiffs' injuries resulting from the uncapped pipe were unquestionably foreseeable.

The National Fuel Gas Code highlights the foreseeable nature of an accident resulting from an uncapped gas pipe.   The code addresses the safe installation and removal of gas piping systems, appliances, and equipment.   It provides, in pertinent part:

> Each [gas] outlet, including a valve or cock outlet, shall be securely closed gastight with a threaded plug or cap immediately after installation and shall be left closed until the gas utilization equipment is connected thereto.  Likewise, when the equipment is disconnected from an outlet and the outlet is not to be used again immediately, it shall be securely closed gastight.
>
> \* \* \*
>
> The basic concept here is that a plug or cap closure is required for all gas openings.  *Closing a valve is not enough to satisfy this requirement because the valve may be opened accidentally or by an unknowing person.*  No temporary or makeshift closure is permitted because anything except a cap or proper plug could leak.[11]

The code makes clear that gas pipes must be capped to prevent accidents.  Moreover, it advises that merely closing a valve is insufficient because the valve could be accidentally opened by a person unfamiliar with gas lines.

James Asaro, a former employee of defendant Exel Direct, Inc., gave deposition testimony that delivery drivers and installers like Pritchard and Dameron were provided extensive training.  They were taught what to do when faced with installing an electric dryer in a space where a gas dryer had been removed and an uncapped gas pipe remained.

---

[10] *Schultz*, 443 Mich at 452 n 7 (emphasis added).

[11] National Fuel Gas Code, § 3.8.2, pp 78-79 (1996) (emphasis added).

Asaro specifically testified that installers were trained to ascertain that the valve for a gas line is turned off and then to either cap the open pipe or bolt it closed. As Asaro noted, an electric dryer installed so that it masks an uncapped gas pipe is an "accident waiting to happen." Consequently, plaintiffs have presented forceful evidence that the dangers of an uncapped gas pipe and the attendant risk of injury are entirely foreseeable. Plaintiffs have shown that, in this case, the risks were foreseeable to the installers.

The third criterion relevant to determining whether a duty exists is the burden on the defendant. The burden of verbally warning a homeowner of the dangers presented by an uncapped gas pipe before concealing it is minuscule. This factor also weighs heavily in favor of imposing a duty on the installers.

In sum, I would impose on the installers a simple duty to warn. I do not believe that the installers should be under a duty to investigate any and all potential hazards in plaintiffs' home. Rather, the scope of their duty should be limited to the area they occupied and in which they installed the electric dryer, which in this case contained the uncapped gas pipe. Their duty should not extend to areas in plaintiffs' home in which they did not work or that they did not even traverse. Nor should it extend to potential hazards unrelated to the dryer or its installation.

The final factor to consider when determining whether a duty exists is the nature of the risk presented. This factor also weighs in favor of imposing a duty to warn on defendants. We have recognized the potential risk posed by natural gas on numerous occasions, describing it as a "highly dangerous substance"[12] and recognizing that

---

[12] *Fleegar v Consumers Power Co*, 262 Mich 537, 544; 247 NW 741 (1933) ("A gas company, since it is dealing with a highly dangerous substance, is bound to use a degree

"[a]nyone dealing with this commodity, because of its dangerous propensities, must exercise such care for the safety of others . . . ."[13] Hence, the great danger presented by a gas leak warrants imposing a duty to warn on the installers.[14]

The majority considers the relationship of the parties and concludes that it does not weigh in favor of imposing a duty. It claims that because Marcy Hill was "aware of the pipes in the kitchen niche," she should have made "further inquiries regarding the nature of the pipes."[15] But it admits that Hill testified that she thought the pipe in question was a water line. Thus, she did not make further inquiries about it and was unaware that leaving it uncapped posed any danger of gas leakage. The pipe was

---

of care commensurate with the danger of its gas escaping and causing injury or damage to the person or property of others.").

[13] *Gadde v Mich Consol Gas Co*, 377 Mich 117, 126; 139 NW2d 722 (1966) ("As we have seen, gas has long been regarded as a dangerous substance. Anyone dealing with this commodity, because of its dangerous propensities, must exercise such care for the safety of others as a reasonably prudent man would exercise in the face of such potential danger.").

[14] The majority discusses *Girvan v Fuelgas Co*, 238 Mich App 703, 714; 607 NW2d 116 (1999), which held that a gas supplier has "a duty to ensure that its product is delivered safely to the exterior of the premises of the end user but, in the absence of an agreement to do otherwise, that duty does not extend to the inspection of the interior lines . . . ." *Ante* at 13 n 37. *Girvan* further noted that, "[c]ognizant of these risks, the reasonable person should seek expert assistance when dealing with dangerous commodities on the person's premises." *Girvan*, 238 Mich App at 714. The majority fails to recognize that plaintiffs *did* seek experts to install their electric dryer. Those experts were Pritchard and Dameron.

[15] *Ante* at 18.

9

invisible to her when it began to emit gas. She had no idea where the gas was coming from.[16]

The majority makes a leap of logic in concluding that because Hill knew that the pipe was there, she had constructive notice that it was dangerous. The record contains no evidence that plaintiffs were aware of the danger that the uncapped gas pipe posed. Indeed, knowledge of the existence of what Hill believed was a water line is entirely distinct from knowledge of the dangers of natural gas. The majority thus confuses plaintiffs' knowledge of the dangers of natural gas with plaintiffs' knowledge of the dangers of an uncapped gas line. There is no evidence that plaintiffs were aware of the danger of the uncapped pipe protruding from the wall of their laundry nook. Accordingly, the cases relied on by the majority holding that there is no duty to warn of a risk of which a person is constructively aware are inapposite.

## DEFENDANTS OWED PLAINTIFFS A LEGAL DUTY NOT TO MAKE AN EXISTING DANGER WORSE

The majority next concludes that the installation of the electric dryer did not create a new dangerous condition or make an existing danger worse. Its analysis of this issue strains credibility.

In *Fultz v Union-Commerce Associates*, a majority of this Court held that a defendant's duty in tort must be separate and distinct from the defendant's duty in

---

[16] The majority claims that Hill could have capped or removed the gas line herself or called the gas company when she smelled gas. *Ante* at 16. This statement's is wholly irrelevant to the question before us, which is whether the installers owed plaintiffs a legal duty in tort. These considerations would be relevant to a determination of comparative negligence and would arise only if this case were to proceed to trial.

10

contract.[17]  As discussed earlier, I would hold that the installers owed plaintiffs common law duties in tort that were separate and distinct from their contractual duties.  *Fultz* identified one class of cases in which a contracting party would owe a duty separate and distinct from a contract—cases in which a defendant's conduct worsens an existing hazard.[18]  Nothing in *Fultz* undermines the general common law duty to act in a nonnegligent manner.  Thus, *Fultz*'s analysis with respect to new dangerous conditions represents only one way in which a party can establish a duty separate and distinct from a contractual obligation.  In this respect, *Fultz* is entirely consistent with *Loweke v Ann Arbor Ceiling & Petition Co, LLC*, which held that "a separate and distinct duty to support a cause of action in tort can arise by . . . the generally recognized common-law duty to use due care in undertakings . . . ."[19]

The installers undertook to install plaintiffs' electric dryer.  Plaintiffs allege they were negligent in doing so.  Thus, for purposes of that duty, it is entirely irrelevant whether their purported negligence worsened an existing hazard.  The proper inquiry, as framed earlier, is whether the installers owed plaintiffs a general duty to act in a reasonable manner.  This is because, irrespective of any alleged new hazard, they had a duty to use reasonable care when installing the dryer.[20]

---

[17] *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004).  I remain committed to my concurring opinion in *Fultz*.  *Id*. at 470-476.

[18] *Id*. at 468-469.

[19] *Loweke*, 489 Mich at 170.

[20] *Id*.; see also *Clark*, 379 Mich at 261 (1967) (stating that a duty "may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due

However, under *Fultz*, the installers also owed plaintiffs a duty not to worsen an existing hazard. Their installation of the electric dryer concealed from view the uncapped gas pipe behind it. Thus, even if plaintiffs knew at some point that dangerous gas was escaping into their home, the source of that gas was concealed from them. Plaintiffs' expert witness specifically testified that the installation increased the hazard to plaintiffs because they could no longer see the uncapped pipe. Plaintiffs' expert further explained that the installers should have advised plaintiffs that they could not proceed with the dryer's installation until the gas pipe was capped.

In sum, the installers owed plaintiffs a general common law duty to use due care when installing the electric dryer. This duty existed regardless of whether the installers' alleged negligence created a new hazard or increased the danger of an existing hazard. They also owed plaintiffs a duty not to worsen an existing hazard.

CONCLUSION

The majority concludes that the installers owed no legal duty to plaintiffs sounding in tort. This conclusion is fatally flawed because, in fact, the installers owed at least two tort-based duties.[21]

---

care, or to so govern his actions as not to unreasonably endanger the person or property of others"); *Ellis v McNaughton*, 76 Mich 237, 241; 42 NW 1113 (1989) ("But, if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts . . . .") (quotation marks and citation omitted).

[21] The liability of the defendants is interrelated because the installers had an agency relationship with the defendants who sold and delivered the washer and dryer.

First, the majority opines that the installers owed no tort duty to plaintiffs because the parties' relationship was limited. This is incorrect. The parties had a relationship that required the installers to use due care when installing plaintiffs' electric dryer. As a consequence, in addition to their contractual duties, the installers had a common law duty to exercise reasonable safeguards to protect plaintiffs from harm. Accordingly, they had a duty to warn plaintiffs of the danger they encountered in plaintiffs' home in the spot where they installed the dryer and of which plaintiffs were ignorant.

The majority suggests that plaintiffs were not ignorant of the danger of the gas pipe and that their knowledge of the danger of escaping gas justifies summary disposition for all defendants. Yet that conclusion depends entirely on imputing to plaintiffs knowledge of the danger, given that plaintiffs testified that they believed the pipe was a water pipe. The majority cites no authority for the proposition that knowledge of an uncapped water pipe is a sufficient basis to impute to someone knowledge that gas may escape from that pipe. I suspect no such authority exists. At best, what plaintiffs knew about the pipe is a factual question whose very existence prevents summary disposition.

Second, the majority concludes that the installers did not make an existing condition more dangerous when they hid the uncapped gas pipe from view by installing the dryer in front of it. Thus, it postulates as perfectly credible that a hidden uncapped gas pipe poses not a whit more danger than one in plain view. Absent this highly questionable conclusion, the majority's finding of no duty cannot stand. The majority does not explain how it can be that the visible danger and the invisible danger are legally indistinguishable.

13

I would hold that the installers owed plaintiffs a common law duty to use due care when installing their electric dryer. This included warning plaintiffs of a danger in the spot where they installed the dryer and of which plaintiffs were ignorant. I would also hold that the installers owed a duty to plaintiffs not to worsen the danger represented by the uncapped gas pipe by obscuring it with a dryer. Accordingly, I respectfully dissent.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway